S. JANSON GRIMES, Substitute Trustee v. SEA & SKY CORPORATION and BILLY E. BRYANT

No. 8028SC696

(Filed 17 February 1981)

**Mortgages and Deeds of Trust § 17.1— payment of portion of note amount for subordination agreement — no prepayment of installments**

Where defendants executed a $37,000 note and deed of trust for the balance due on the purchase price of land, the note was payable by ten semiannual payments of $3,700 plus interest beginning on 27 May 1979, it was necessary for defendants to have this deed of trust subordinated to a construction loan deed of trust in order to obtain funds to erect a building on the land, on 23 February 1979 the holders of the note executed a subordination agreement upon payment by defendants of $30,000 on the note, the same date the parties agreed that upon payment of $7,000 on 15 March 1979 the deed of trust would be cancelled of

record, and neither party directed application of the $30,000, the trial court properly held that the $30,000 payment was not a mere prepayment of installments of the indebtedness but was given as consideration for the subordination agreement, that the $30,000 payment did not alter the provision of the note requiring the payment of $3,700 plus interest on 27 May 1979, and that the note was in default and the deed of trust was subject to foreclosure when defendants failed to make the 27 May payment, since it is apparent from the record that the intent of the parties was to reduce the most precariously secured portion of the debt, that which was due furthest in the future.

APPEAL by defendants from *Allen, Judge.* Order signed 29 February 1980 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 6 February 1981.

On 27 November 1978, the corporate defendant executed a deed of trust and note in the amount of $37,000. Defendant Bryant signed only in his capacity as president of the corporation and is not personally liable. The documents secured the balance due on the purchase price of the real property described in the deed of trust. The note was payable by ten semiannual payments of $3,700 plus interest each, commencing 27 May 1979.

After the closing, defendants attempted to obtain financing for an office building to be erected upon the land subject to the deed of trust. It was necessary for defendants to have this deed of trust subordinated to the financing deed of trust in order to obtain the additional loan. Extended negotiations took place between Mr. and Mrs. Barlas, the holders of the note and deed of trust, and defendants, which finally resulted in an agreement. On 23 February 1979, the Barlases accepted a payment of $30,000 on the note and executed a subordination agreement in favor of the lender of the construction funds. On the same date, Mr. Barlas and defendant Bryant agreed that upon payment of $7,000 on 15 March 1979 to the noteholders, the deed of trust would be canceled of record. Neither defendant paid the Barlases the $7,000 on or before 15 March 1979.

When defendants failed to pay the first installment on the note on 27 May 1979, plaintiff filed a motion for and notice of hearing on order of foreclosure with the clerk of superior court. Defendants did not file a response to the pleading. After hearing before the clerk, an order was entered finding that the note was not in default and denying plaintiff's motion for order of foreclosure. Plaintiff appealed to the superior court. Following the hearing, the judge entered an order finding the facts as above recited and also finding that the $30,000 payment was made as consideration for the execu-

tion of the subordination agreement by the noteholders. The court further concluded that the $30,000 payment did not alter the provisions of the note requiring the payment of $3,700 plus interest on 27 May 1979. Upon the further finding that the note was in default, the court granted plaintiff's motion to foreclose the deed of trust. From this order, defendants appeal.

*Brock, Begley & Drye, by Michael W. Drye, for plaintiff appellee.*

*Swain & Stevenson, by Joel B. Stevenson, for defendant appellants.*

MARTIN (Harry C.), Judge.

Defendants make one argument on appeal, that the court erred in signing and entering the order of foreclosure. Defendants did not make any exceptions to the findings of fact or conclusions of law made by the court in its order. Therefore, the findings of fact are deemed to be (and are in fact) supported by substantial competent evidence and are conclusive upon appeal. *Schloss v Jamison,* 258 N.C. 271, 128 S.E.2d 590 (1962); *In re Vinson,* 42 N.C. App. 28, 255 S.E.2d 644 (1979). The findings of fact support the conclusions of law and the entry of the order allowing foreclosure. *See In re Enoch,* 36 N.C. App. 255, 243 S.E.2d 388 (1978).

Defendants argue that *Adams v. Taylor,* 253 N.C. 411, 117 S.E.2d 27 (1960), controls this appeal. In *Adams,* part of the land subject to a deed of trust was condemned for highway purposes and some of the proceeds of the judgment were paid to the creditor. The debtor contended that he was not obligated to make any monthly payments until the proceeds of the judgment had been consumed by applying them as monthly payments under the terms of the note and deed of trust. The Court agreed and held:

> The payment made by the Highway Commission was not a payment voluntarily made by the debtor. The taking of the land was over the protest of debtor and creditor. Compensation for the taking was enforced by judicial proceeding. Since the payment was not voluntary, the debtor had no right to direct how it should be used, nor did the creditor have that right. . . . Since neither debtor nor creditor had a right to direct the manner in which the payment should be used, it became the duty of the court to

direct application so as to accord with "intrinsic justice or the equity of the case."

*Id.* at 413, 117 S.E.2d at 28-29 (citations omitted).

The distinction between *Adams* and the present case is that here defendants made the $30,000 payment voluntarily as consideration for the execution of the subordination agreement, which was essential to defendants' development of the property. The rationale of *Adams* is not applicable to the facts of this case, as equity and justice would not require the noteholders to wait years before receiving the final $7,000 payment where they had allowed their security for the debt to be drastically impaired for the benefit of defendants.

"[I]f neither debtor nor creditor applies payment, it will be applied to unsecured or most precariously secured debt, or according to intrinsic justice or the equity of the case." *Power Co. v. Clay County*, 213 N.C. 698, 709, 197 S.E. 603, 610 (1938). Here, neither party directed application of the $30,000, but it is apparent from the record that their intent was to reduce the most precariously secured portion of the debt, that which was due furthest in the future. The contemporaneous agreement that defendants would pay the balance on 15 March 1979 supports the noteholders' expectation that they would be repaid fully within the current year.

The trial court in effect found that the $30,000 payment was not a mere prepayment of installments of the indebtedness, but was given as consideration for the subordination agreement. The conclusion of the court that defendants were obligated to make the 27 May 1979 payment is supported by findings of fact. The order allowing foreclosure is

Affirmed.

Judges WEBB and WHICHARD concur.