ANDERSON CHEVROLET/OLDS, INC. v. PHYLLIS HIGGINS, D/B/A HIGGINS INDUSTRIES

No. 8130DC984

(Filed 15 June 1982)

1. **Appeal and Error §§ 24, 28— no exception in record—findings binding on appeal**

Under App. R. 10(a), where there are no exceptions in the record, an appeal from a final judgment may present for review whether the judgment is supported by the findings and conclusions. However, where no exceptions are made to the findings, they are presumed to be supported by competent evidence and are binding on appeal.

2. **Contracts § 27— contract to repair—findings supporting conclusion**

In an action to recover the cost of repairs performed by plaintiff on a vehicle leased by defendant, findings which established defendant (1) requested plaintiff to tow the vehicle to its garage, (2) authorized plaintiff to disassemble the vehicle, (3) allowed the disassembled vehicle to remain in plaintiff's garage for twenty-two days, and (4) sent two of her employees to plaintiff's garage to take possession of the repaired vehicle after being informed that the repairs were complete and the cost thereof, permitted the conclusion that defendant impliedly accepted plaintiff's offer to repair the vehicle.

APPEAL by defendant from *Snow, Judge.* Judgment entered 9 April 1981 in District Court, HAYWOOD County. Heard in the Court of Appeals 30 April 1982.

Plaintiff, a business engaged in the selling, leasing and repairing of cars and trucks, instituted this action to recover losses caused by defendant's alleged breach of a "Non-Maintenance Lease Agreement" [hereinafter the Agreement], and to recover the cost of repairs performed by plaintiff on the leased vehicle. The court, sitting without a jury, entered the following findings of fact:

On 29 October 1977 the parties entered into the Agreement wherein defendant was to lease a 1978 Chevrolet pickup truck from plaintiff and pay monthly rental payments of $179.68. The Agreement provided: "Lessee shall pay for all maintenance and repairs to keep vehicle in good working order and condition and will maintain the vehicle as required to keep the manufacturer's warranty in force. The vehicle will be returned at the end of the lease period in good condition, reasonable wear and tear ex-

cepted." Defendant accepted delivery on or about the date the Agreement was executed and thereafter made seventeen monthly payments.

On 11 December 1978 an employee of defendant called plaintiff and indicated that the truck had stopped running. He requested that plaintiff tow the vehicle to plaintiff's garage and determine the problem. Plaintiff promptly towed the vehicle and thereafter discovered that it contained no motor oil. Further examination revealed that it displayed no maintenance stickers with the exception of the pre-delivery inspection sticker applied by plaintiff.

Plaintiff keeps maintenance records on all vehicles leased or sold by it. An examination of these records indicated that the truck leased to defendant had not been lubricated in fourteen months, and that oil had neither been changed nor added.

At the time the truck was towed to plaintiff's garage, the odometer showed 25,494 miles. When the oil pan was removed, plaintiff discovered that the engine was "seized" and that it would be necessary to disassemble the engine in order to ascertain the extent of the damage and the type of repairs needed. Plaintiff called defendant to request permission to disassemble the engine for this purpose.

On 15 December 1978 an employee of defendant authorized the disassembly. The engine was disassembled, and plaintiff advised defendant or one of her employees that the engine needed a new block and other parts at an estimated cost of $1,399. After personally conferring with plaintiff's president about the repairs, defendant sent some of her employees to plaintiff's garage to examine the block and damaged parts. After conversing with an employee of General Motor's Chevrolet Division, defendant verified that the vehicle was no longer under warranty.

The disassembled vehicle continued to occupy one of plaintiff's work bays for approximately twenty-two days. On 2 January 1979 plaintiff's president instructed his employees to repair the vehicle. A new block and other necessary parts were installed for the purpose of returning the vehicle to good working order.

On or about 5 January 1979 plaintiff's service manager telephoned defendant to inform her that the vehicle had been repaired, and that the bill for said repairs was $1,379.87 in addition to a $10 bill for towing. A few days later defendant sent two of her employees to the garage for the purpose of accepting and taking possession of the repaired vehicle. When they arrived plaintiff advised them that both bills would have to be paid before possession could be taken. Defendant refused to pay any part of the bills.

The statements and conduct of the defendant and her employees evinced defendant's intention to contract with plaintiff for the necessary repairs to the vehicle and further constituted, by reasonable inference and implication, a contract between the parties.

Defendant made seventeen lease payments under the Agreement and breached the Agreement by failing and refusing to make the remaining payments. Plaintiff had complied with the Agreement provision entitled "Premature Lease Termination" by specifically advertising and selling the vehicle to the highest bidder for $4,800. As a result of defendant's breach, plaintiff suffered damages, computed in accordance with the terms and conditions of the Agreement, in the amount of $954.64. This amount has not been paid.

The Agreement further specified that defendant would pay to plaintiff "reasonable collection cost, including attorney fees and legal expenses incurred."

Based upon the foregoing findings of fact the trial court entered the following conclusions of law:

1. That Defendant contracted with Plaintiff to tow her leased vehicle into Plaintiff's garage for which services Plaintiff is entitled to recover of Defendant the amount of $10.00.

2. That Defendant contracted with Plaintiff to repair her leased motor vehicle and pursuant thereto Plaintiff repaired said vehicle and is entitled to recover from Defendant the amount of $1379.87 for labor and parts.

3. That Defendant breached the Non-Maintenance Lease Agreement previously entered into between the parties and because of said breach Plaintiff is entitled to recover judgment against Defendant in [the] amount of $954.64.

. . . .

5. That Defendant is not entitled to recover from Plaintiff by virtue of the counterclaim set forth in her Answer.

Defendant appeals.

*Hallett S. Ward, Jr., for plaintiff appellee.*

*Burton C. Smith, Jr., for defendant appellant.*

WHICHARD, Judge.

[1] No exceptions appear in the record. "[T]he scope of review on appeal is confined to a consideration of those exceptions set out and made the basis of assignments of error in the record . . . ." Rule 10(a), Rules of Appellate Procedure. The rule provides, however, that notwithstanding the absence of exceptions, an appeal duly taken from a final judgment may present for review, if properly raised in the brief, the question of whether the judgment is supported by the findings of fact and conclusions of law. *Id. See Swygert v. Swygert,* 46 N.C. App. 173, 180-81, 264 S.E. 2d 902, 907 (1980).

No exceptions to the findings of fact appear. When no exceptions are made to the findings of fact, they are presumed to be supported by competent evidence and are binding on appeal. *Grimes v. Sea & Sky Corp.,* 50 N.C. App. 654, 656, 274 S.E. 2d 877, 878 (1981); *In re Hodges,* 49 N.C. App. 189, 190, 270 S.E. 2d 599, 599-600 (1980); *Schloss v. Jamison,* 258 N.C. 271, 275, 128 S.E. 2d 590, 593 (1962).

[2] We consider the errors argued in defendant's brief, then, to determine whether the findings support the conclusions entered.

The court made the following "finding of fact":

That the acts, statements, and conduct of the Defendant and her authorized employees, and the reasonable inferences arising therefrom, evinced the intention of Defendant to contract with the Plaintiff for the necessary repairs to her

leased vehicle, constituted a manifestation and expression of assent necessary to form a contract and by reasonable inference and implication constituted a contract between Plaintiff and Defendant.

Defendant first contends no such contract existed, because the evidence fails to show a meeting of the minds or mutuality of consent. Because defendant failed to except to the foregoing finding, the question of sufficiency of the evidence to support it does not arise. It is deemed supported by competent evidence. *Grimes, supra.* The "finding of fact" is, however, at least in part, in actuality a conclusion of law. Whether the findings of fact support the conclusion is the principal issue presented.

A contract to repair the leased vehicle would be one implied in fact, since there was clearly no express or written contract. Our Supreme Court has stated:

"A 'contract implied in fact,' . . . arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation is implied or presumed from their acts, or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract." 17 C.J.S., *Contracts* § 4(b) (1963). An implied contract is valid and enforceable as if it were express or written. "[A]part from the mode of proving the fact of mutual assent, there is no difference at all in legal effect between express· and contracts implied in fact." Simpson, Contracts, § 5 (2d ed. 1965) . . . . The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds. *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 161 S.E. 2d 453 (1968). This mutual assent and the effectuation of the parties' intent is normally accomplished through the mechanism of offer and acceptance . . . . With regard to a contract implied in fact, one looks not to some express agreement, but to the actions of the parties showing an implied offer and acceptance.

*Snyder v. Freeman*, 300 N.C. 204, 217-18, 266 S.E. 2d 593, 602 (1980). The relationship between the parties, or other circumstances, may justify the offeror in assuming that silence indicates assent to his offer. Examples are:

(1) Where the offeree with reasonable opportunity to reject offered goods or services takes the benefit of them under circumstances which would indicate to a reasonable man that they were offered with the expectation of compensation.

. . . .

(3) Where because of previous dealings or otherwise, the offeree has given the offeror reason to understand that the silence or inaction was intended by the offeree as a manifestation of assent, and the offeror does so understand.

(4) Where the offeree takes or retains possession of property which has been offered to him, such taking or retention in the absence of other circumstances is an acceptance.

1 S. Williston, *A Treatise on the Law of Contracts* § 91 (3d ed. 1957).

The findings here establish the following: Defendant signed a lease agreement with plaintiff in which she agreed to pay for all "maintenance and repairs to keep [the] vehicle in good working order." When the vehicle ceased to function, defendant called plaintiff to request that it tow the vehicle to its garage. Defendant thereafter gave plaintiff permission to disassemble the engine to ascertain the problem. Plaintiff informed defendant of the needed repairs and estimated cost. Defendant then instructed several of her employees to examine the damaged parts, but she never attempted to have the vehicle removed from plaintiff's garage. Approximately twenty-two days after informing defendant of needed repairs, plaintiff's president ordered his employees to repair the disassembled vehicle. When the vehicle was ready, plaintiff's service manager notified defendant that the repairs had been completed and the bill was $1,379.87. A few days later, defendant sent two of her employees to plaintiff's garage "for the purpose of accepting and taking possession of the repaired leased vehicle."

These findings support the conclusion that defendant contracted with plaintiff to have the vehicle repaired. Defendant's conduct in (1) requesting plaintiff to tow the vehicle to its garage, (2) authorizing plaintiff to disassemble the vehicle, and (3) allowing the disassembled vehicle to remain in plaintiff's garage for twenty-two days clearly permit the conclusion that defendant

gave plaintiff reason to believe she had consented to the repairs. The finding most detrimental to defendant's contention that no contract existed is the finding that after she was informed that the repairs were complete, and the cost thereof, defendant sent two of her employees to plaintiff's garage "for the purpose of accepting and taking possession of the repaired leased vehicle." This finding fully supports a conclusion that by her conduct defendant impliedly accepted plaintiff's offer to repair the vehicle, and thereby impliedly incurred an obligation to pay for the repairs.

Defendant next contends the court erred in awarding damages to plaintiff in the amount of the repair bill "without evidence of the reasonable nature of such damages within the community at the time." None of the errors assigned relate to the issue of damages. The issue thus is not properly before us for review. Rule 10(a), Rules of Appellate Procedure.

Defendant's contention that the court erred in failing to make findings regarding her counterclaim likewise is not properly before us. Defendant took no exception to the conclusion of law regarding the counterclaim. Further, she has failed to identify the omitted findings of fact as required by App. R. 10(b)(2) and to cite any supporting authority as required by App. R. 28(b)(3). We thus do not consider the argument.

Our examination of the record and the contentions of the parties discloses no basis for reversal or re-trial. Accordingly, the judgment is

Affirmed.

Judges WEBB and WELLS concur.