FIRST UNION NATIONAL BANK OF NORTH CAROLINA, PLAINTIFF v. BOB DUNN FORD, INC., DEFENDANT

No. 9418DC546

(Filed 4 April 1995)

**Secured Transactions § 123 (NCI4th)— repurchase agreement—definition**

The trial court's findings supported its conclusion that a "repurchase agreement" between an automobile dealer and the bank to which the dealer sold a security agreement was a trade term in the industry that required the dealer to repurchase the secured vehicle from the bank only if the bank tendered the vehicle to the dealer within 90 days of the buyers' default.

**Am Jur 2d, Secured Transactions § 631.**

Appeal by plaintiff from judgment entered 17 December 1993 by Judge William Daisy in Guilford County District Court. Heard in the Court of Appeals 20 February 1995.

In May 1987 defendant and a married couple (the buyers) entered into a purchase and sale agreement (the security agreement) for the sale of a 1987 Ford Bronco. Defendant then attempted to sell the security agreement to plaintiff. Plaintiff and defendant had previously entered into a contract which governed the purchase and sale of all such security agreements on a without recourse basis, meaning that once plaintiff purchased a security agreement from defendant, defendant was relieved of liability to plaintiff for the balance remaining due on the security agreement in case of default by a buyer.

On this occasion defendant mailed the security agreement to plaintiff with the understanding that plaintiff would purchase it without recourse. Plaintiff refused to purchase the security agreement because the buyers did not meet plaintiff's minimum credit requirements. Plaintiff mailed a letter to defendant stating that plaintiff would purchase the security agreement only if defendant agreed to enter into a repurchase agreement. Plaintiff provided a form, but it

**FIRST UNION NATIONAL BANK v. BOB DUNN FORD, INC.**

[118 N.C. App. 444 (1995)]

contained only a space for guarantors to sign. Defendant's general manager called plaintiff to ask how he should sign the agreement. Plaintiff told defendant to sign in the space reserved for guarantors, and the agreement would be treated as a repurchase agreement.

The buyers defaulted in November 1988. In April 1990 plaintiff, pursuant to the repurchase agreement, demanded payment from defendant of the outstanding balance on the security agreement.

At trial plaintiff abandoned its claim that defendant was liable as a guarantor. The parties agreed that, although defendant signed in a space reserved for guarantors, the agreement was actually a repurchase agreement and that the real issue was over the meaning of the term repurchase agreement.

Defendant's evidence showed that, in the industry, a repurchase agreement was an agreement under which the financial institution must repossess the automobile and return it to the dealer. The dealer must then repurchase the automobile. The dealer's liability is contingent, however, on the financial institution returning the automobile within 90 days of default, subject to a few exceptions such as acts of war or bankruptcy of the defaulting buyer. The evidence also showed that plaintiff did not tender the automobile to defendant until at least one and a half years after the buyers defaulted.

Plaintiff's evidence showed that a repurchase agreement is a full recourse agreement and that under a full recourse agreement defendant would have to repurchase the security agreement upon demand by plaintiff. Next, in anticipation that the judge might accept defendant's definition of repurchase agreement, plaintiff showed that there are many industry exceptions to the 90 day rule and that plaintiff fell within at least one of those exceptions.

The trial judge accepted defendant's definition of repurchase agreement and ruled that because plaintiff did not return the automobile to defendant within 90 days of the buyers' default defendant was not required to repurchase the automobile. From this judgment plaintiff appeals.

*Clontz, Clontz & Hunter, P.L.L.C., by Michael S. Hunter, for plaintiff appellant.*

*Alspaugh & Carruthers, by Thomas D. Carruthers, for defendant appellee.*

ARNOLD, Chief Judge.

Plaintiff brings forward one assignment of error: "The Court's Conclusion of Law Number 3, on the ground that the facts as found by the court and the applicable law do not support the Conclusion." Much of plaintiff's argument, however, is dedicated to another question—whether or not the evidence supports the findings. This question is not properly before us. Plaintiff did not assign error to any of the trial judge's findings. When no assignment of error is made to particular findings, they are "presumed to be supported by competent evidence and are binding on appeal." *Anderson Chevrolet/Olds, Inc. v. Higgins*, 57 N.C. App. 650, 653, 292 S.E.2d 159, 161 (1982). Even if the assignment of error could be read as challenging the sufficiency of the evidence, it would be ineffective to support plaintiff's argument. An assignment of error generally challenging the sufficiency of evidence to support numerous findings of fact is broadside and ineffective. *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 340 S.E.2d 755, *cert. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986); *Wade v. Wade*, 72 N.C. App. 372, 325 S.E.2d 260, *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985). Our review is therefore limited to whether or not the findings support the judge's conclusion of law number 3.

The primary issue at trial was the meaning of "repurchase agreement." The court found that the term repurchase is subject to multiple interpretations. The court also found facts related to each interpretation. Specifically, the court found the following:

> That at trial Bob Dunn asserted the repurchase agreement is a trade term in the industry that requires the dealer to repurchase the vehicle from the bank if the bank tenders the vehicle to the dealer within 90 days of default by the purchaser. That Bob Dunn admitted there are some instances in which this 90 day period can be extended such as acts of war or bankruptcy of the defaulting purchaser. That First Union at trial asserted that a repurchase agreement acts as a full guaranty. That First Union also asserted that if a repurchase does not act as a full guaranty then the repurchase forms utilized by First Union control the terms of the agreement. That First Union asserted these forms provide for the 90 day period as described by Bob Dunn. that (sic) this 90 day period can be extended by acts of war or bankruptcy as described by Bob Dunn and that this 90 day period can also be extended if the defaulting purchaser "refuses to surrender possession" as stated

**FIRST UNION NATIONAL BANK v. BOB DUNN FORD, INC.**

[118 N.C. App. 444 (1995)]

in the First Union Form. Bob Dunn admitted that the First Union form, the Northwestern Bank form, and the agreement as he described it were typical of the industry even though each format differed as to specific exceptions to the 90 day period. Both parties agreed that Bob Dunn had not signed the First Union form nor was this form presented to Bob Dunn at any point prior signing (sic) of the agreement which is the basis of this lawsuit.

From these and other findings of fact the trial judge drew conclusion number 3:

That the agreement which is the basis of this lawsuit is ambiguous. That this agreement was a repurchase agreement. That a repurchase agreement is a trade term in the industry that requires the dealer to repurchase the vehicle from the bank if the bank tenders the vehicle to the dealer within 90 days of default by the purchaser. That there are some instances in which this 90 day period can be extended. That Bob Dunn's asserted exceptions to this 90 day period are reasonable and form the basis of the agreement. This 90 day period can be extended due to acts of war or bankruptcy of the defaulting purchaser. That First Union failed to tender the car to Bob Dunn within 90 days of default by the purchasers and failed to demonstrate it fell within any exceptions to the 90 day period. Thus Bob Dunn is not required to repurchase the vehicle from First Union.

The questions before the judge were (1) whether or not the agreement between plaintiff and defendant is ambiguous, and (2) if the agreement is ambiguous, what is the meaning of repurchase agreement. The trial judge's findings are relevant to these questions, and the findings fully support his conclusion of law. The order reflects a reasoned decision. We therefore affirm the judgment.

Affirmed.

Judges WYNN and MARTIN, John C., concur.