STATE OF NORTH CAROLINA v. JERRY MARTIN ADAMS

No. COA02-1023

(Filed 5 August 2003)

**Search and Seizure— videotapes seized during drug raid— identity of people controlling premises**

Defendant's motion to suppress videotapes seized during a narcotics search of his home was properly suppressed. The tapes portrayed defendant having sex in the bedroom where marijuana and drug paraphernalia were found and the warrant under which the mobile home was searched included articles of personal property tending to establish the identity of those in control of the premises. N.C.G.S. § 15A-242(4).

Appeal by defendant from judgments entered 14 June 2002 by Judge D. Jack Hooks, Jr. and an order entered 24 June 2002 *nunc pro tunc* to 14 June 2002 by Judge William C. Gore in Brunswick County Superior Court. Heard in the Court of Appeals 21 May 2003.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General John F. Oates, Jr., for the State.*

*Ramos and Lewis, L.L.P., by Michael R. Ramos; Stiller and Disbrow, by Bonner Stiller, for defendant-appellant.*

HUNTER, Judge.

Jerry Martin Adams ("defendant") appeals from the trial court's denial of his motion to suppress videotapes seized from his bedroom closet during a search of his residence. We affirm the trial court's denial of defendant's motion for the reasons stated herein.

Evidence presented at the hearing on defendant's motion to suppress is briefly summarized as follows. On 8 March 2002, Steve Lanier ("Agent Lanier"), a narcotics agent with the Brunswick County Sheriff's Department, obtained and executed a search warrant for defendant's residence. Information from a confidential source about defendant selling narcotics from his residence and controlled buys from that residence led to the issuance of the warrant. The following language was included in the search warrant with respect to the items to be seized: "[A]rticles of personal property tending to establish and document sales of marijuana . . . plus articles of personal property tending to establish the identity of persons in control of the premises . . . ."

When the law enforcement officers arrived at defendant's residence, there were at least twenty people gathered around a bonfire outside. Four other persons besides defendant lived in defendant's mobile home. During the execution of the search warrant, the officers seized marijuana, drug paraphernalia, a box of videotapes, and a stolen firearm.

Matthew Strangman ("Agent Strangman") and Shelton Caison ("Agent Caison") searched defendant's bedroom, in which they found a small amount of marijuana, drug paraphernalia, a concealed video camera located on a table at the foot of the bed positioned at an angle to videotape the bed area, and a box of homemade videotapes which were located in the closet. There were no markings or labels on the videotapes denoting the images they contained. Agent Strangman briefly viewed two of the videotapes while in defendant's bedroom and observed what appeared to be sexual activity between a male and a female.

STATE v. ADAMS

[159 N.C. App. 676 (2003)]

Agent Lanier, who was responsible for seizing evidence during the execution of the search warrant, later entered defendant's bedroom. He was told by other officers that a box of videotapes had been found in the room but he was not informed that Agent Strangman had viewed the videotapes nor was he advised of the images observed on the videotapes. While in defendant's bedroom, Agent Lanier discovered the video camera that was facing the view of the bed. After advising defendant of his *Miranda* rights, Agent Lanier asked defendant what was on the videotapes. Defendant responded, "that it was a video of him having sex with other women." Agent Lanier testified that he seized the videotapes "[i]n order to establish who was in control of the property . . . ." Further, Lieutenant John Ingram, the officer in charge of the narcotics unit, indicated that it was common practice to seize videotapes to establish the identity of the person controlling the premises. Agent Lanier later viewed the videotapes in his office. After observing that the videotapes showed defendant engaged in sexual acts with women, he turned the tapes over to Detective Dawn Francisco because he suspected that one of the women shown having sex with defendant was underage.

Defendant was charged with seven counts of participating in the prostitution of a minor, three counts of first degree sexual exploitation of a minor, seven counts of statutory rape, one count of maintaining a dwelling for the purpose of keeping and selling controlled substances, and one count of possession with intent to sell or deliver marijuana. On 10 May 2002, defendant filed a motion to suppress the videotapes seized from his bedroom closet during the search of his residence. Following a hearing, the trial court denied defendant's motion in an order dated 24 June 2002, *nunc pro tunc* to 14 June 2002. Defendant then entered a plea of no contest to three counts of first degree sexual exploitation of a minor and one count of participating in the prostitution of a minor, while reserving his right to appeal the court's denial of his motion to suppress. The trial court sentenced defendant to 166 months to 229 months imprisonment. Pursuant to the plea agreement, the remaining charges were dismissed.

The sole issue on appeal is whether the trial court erred in denying defendant's motion to suppress the videotapes seized during the search of defendant's residence. We conclude the trial court did not err and therefore affirm the court's denial of defendant's motion to suppress.

At the outset, defendant has only one broad assignment of error, which states:

> The trial court committed reversible error by denying defendant's motion to suppress certain video tapes searched and seized by law enforcement during a search of the defendant's home pursuant to a search warrant in that the video tapes were not within the scope of those items authorized to be searched for and seized by the warrant.

Thus, defendant has failed to assign error to any of the trial court's findings of fact. When no assignment of error is made to particular findings, "they are presumed to be supported by competent evidence and are binding on appeal." *Anderson Chevrolet/Olds v. Higgins*, 57 N.C. App. 650, 653, 292 S.E.2d 159, 161 (1982). Accordingly, this Court is bound by the trial court's findings and our review is limited to determining whether these findings support the trial court's conclusions. *State v. Phillips*, 151 N.C. App. 185, 565 S.E.2d 697 (2002). The trial court's conclusions of law will be upheld if supported by its findings of fact. *State v. Cooke*, 306 N.C. 132, 291 S.E.2d 618 (1982).

The trial court made the following conclusions of law:

1. The issuance of the search warrant was based on probable cause and adequately stated the premises to be searched and the items to be seized.

2. North Carolina General Statute 15A-242(4) states that an item is subject to a seizure under a search warrant if there is probable cause to believe that it constitutes of [sic] the identity of a person participating in an offense. Where the defendant knowingly states to an officer that he is on the videotape, and that videotape depicts the defendant within the room where narcotics and paraphernalia were found, the seizure of the videotape is within the scope of said statute.

3. The viewing of the tape is allowed by the "plain view" exception to the 4th Amendment in that the defendant identified himself as the individual on the video tape thereby providing the agent with first hand information to establish the probable cause to seize an item to show identity as required by General Statute 15A-242(4).

4. The seizure was reasonable and the Court determines that it violates no provision of the general statutes nor any right

STATE v. ADAMS

[159 N.C. App. 676 (2003)]

granted by the United States or North Carolina Constitution, and the Defendant's Motion to Suppress is denied.

It is undisputed that the search warrant issued in this case was based on probable cause. Defendant argues, however, that the trial court erred in concluding the videotapes were among those items subject to seizure pursuant to N.C. Gen. Stat. § 15A-242 (2001). This Section states: "An item is subject to seizure pursuant to a search warrant if there is probable cause to believe that it: . . . (4) Constitutes evidence of an offense or the identity of a person participating in an offense." N.C. Gen. Stat. § 15A-242. Moreover, the search warrant in this case included in its description of property to be seized, "articles of personal property tending to establish the identity of persons in control of the premises . . . ."

Defendant asserts that the videotapes were initially seized and searched by Agents Strangman and Caison. Defendant additionally points out that the tapes contained no labels disclosing their contents. Thus, defendant reasons that there was nothing from which the officers could have concluded that the videotapes were subject to search and seizure under the warrant or any provision of N.C. Gen. Stat. § 15A-242. However, the trial court's findings of fact, to which we are bound, established that the narcotics agents discovered "a small amount of marijuana and drug paraphernalia in [defendant's] room, as well as a concealed video camera and a box of homemade videotapes." The court acknowledged in its findings that Officer Strangman viewed two of the videotapes while in defendant's bedroom. However, the court found that Officer Strangman did not tell Agent Lanier that he had viewed the tapes prior to Agent Lanier seizing them. When Agent Lanier asked defendant what was on the tapes, defendant replied, " 'me having sex with women.' " The court additionally found that:

Due to the proximity of the camera to the tapes and their location in the locked room, agent Lanier then seized the tapes along with other items to establish the defendant's control of the room, and the contraband found in the room, to the exclusion of the other four residents.

Further, the court found that three other occupants of the premises were charged with weapons and narcotics offenses and thirteen citations were issued to non-residents on the premises for drug offenses. Finally, the court found that "[t]he images on [the] videotapes did

establish the defendant's control of that particular room and his intent to possess with the intent to sell and/or deliver marijuana from the residence."

We conclude that these findings support the court's conclusion that the videotapes were properly seized pursuant to N.C. Gen. Stat. § 15A-242(4). The findings show that there was probable cause to believe that the tapes constituted evidence of the identity of the person participating in the offense of possessing marijuana with the intent to sell and/or deliver marijuana from the residence. When defendant was asked by Agent Lanier what was on the tapes, defendant replied, " 'me having sex with women.' " In addition, there was a concealed video camera facing defendant's bed. Based on these facts, the officers had probable cause to believe that the videotapes would provide evidence of the person in control of the bedroom where marijuana and drug paraphernalia were discovered. In addition, the videotapes were among the items listed in the search warrant to be seized under the language, "articles of personal property tending to establish the identity of persons in control of the premises . . . ." Therefore, the trial court properly denied defendant's motion to suppress the videotapes found during the search of defendant's residence. Accordingly, we affirm.

Affirmed.

Judges MARTIN and GEER concur.