DEBORAH L. HODGES, Plaintiff,
v.
MIKE M. HODGES, Defendant.
DEBORAH L. HODGES, Plaintiff,
v.
MIKE M. HODGES, Defendant.
DEBORAH L. HODGES, Plaintiff,
v.
MIKE M. HODGES, Defendant.
Nos. COA09-128, COA09-129, COA09-130
Court of Appeals of North Carolina.
Filed November 3, 2009.
This case not for publication
Prince, Youngblood & Massagee, PLLC, by Richard J. Tanker and Sharon B. Alexander, for plaintiff-appellee.
Whitmire & Beeker, by Dawn Skerrett, for defendant-appellant.
MARTIN, Chief Judge.
Mike Hodges ("defendant") appeals from the entry of an equitable distribution order and the denial of a Rule 60(b) motion to set aside a consent order.
Defendant was married to Deborah Hodges ("plaintiff") on 30 August 1980. A separation agreement was entered into on 6 December 1994 and defendant obtained a divorce judgment on 27 March 1996. On 25 March 1997, a consent order was entered which set aside the previous divorce judgment and the separation agreement. On 24 March 1998, plaintiff filed a complaint seeking a judgment of absolute divorce and equitable distribution of marital property. A judgment for absolute divorce was entered on 12 June 1998.
For reasons which are not entirely clear from the record, trial on the issue of equitable distribution did not occur until 22 July 2008. Because the trial could not be completed after two days, the matter was put over for the taking of additional evidence on 8 August 2008. On that date, the court heard evidence from defendant's expert valuation witness. However, the record indicates that the court's equitable distribution order is dated 7 August 2008 and was time-stamped "Filed" at 8:18 a.m. on 8 August 2008. Both parties have given notice of appeal from this order.
The dispute centers around the classification of a business known as Boondocks Manufacturing, Inc. ("Boondocks") and the classification of property bought after the date of separation with income from Boondocks. Defendant claims that Boondocks and the property bought after the date of separation are separate property. Plaintiff contends, as determined by the trial court, that Boondocks is a mixed asset, but claims a larger marital interest in the business than was awarded. Specifically, the following conclusions of law and their supporting findings of fact are challenged:
5. The $23,000 that the parties paid on [defendant's separate] $100,000 debt was paid with marital funds, and created in the parties a marital interest in the business and the said land, amounting to 11.5%.
6. [Defendant's] father's forgiveness of the balance of [defendant's] separate debt was a gift to [defendant], which vested [defendant] with a separate interest in the said business and land, to the extent of 88.5%.
. . . .
9. The first $200,000 of the corporation's value is [defendant's] separate property to the extent of 88.5%, and is marital property to the extent of 11.5%.
10. The increase in the corporation's value between the date of the parties' marriage and the [date of separation] (which is to say its value in excess of $200,000), being the result of the active efforts of both parties during the marriage, is marital property.
11. The properties discussed in Finding 8, although not titled to [defendant] (because he has not recorded the deed which he holds for them), were acquired by [defendant] as that term is used in G.S. 50-20(b). Because this property was acquired after the [date of separation] with the proceeds of a mixed asset (the corporation), which proceeds came into being after the parties' mutual efforts had ceased, its status is the same as the status of those proceeds, which mirrors the business's ownership: 88.5% [defendant's] separate property, 11.5% marital property. This same conclusion applies to the proceeds from the sale of the property at Main and Church Streets (Finding 9), the property on South Main and the [post-date of separation] rent it has generated (Finding 10), and the Merrill Lynch account numbered XXX-XXXXX (Finding 14): 88.5% [defendant's] separate property, 11.5% marital property.
(Footnote omitted.) The equitable distribution order granted a distributive award in the amount of $739,315.00 to plaintiff.
On 6 August 2008, defendant filed a motion pursuant to N.C.G.S. § 1A-1, Rule 60(b)(4) and (b)(6) to set aside the 1997 consent order which had set aside the divorce judgment and separation agreement. The motion was denied for untimeliness, and defendant has also given notice of appeal from the order denying the motion. Defendant moved to consolidate the three cases on 30 January 2009 and the motion was granted. Nevertheless, inexplicably, the parties have filed three separate records.

I.
Defendant first contends his Rule 60 motion should have been evaluated under Rule 60(b)(4) or (b)(6) and should have been granted. Rule 60(b)(4) allows a court to relieve a party from a final order if the judgment is void. N.C. Gen. Stat. § 1A-1, Rule 60(b)(4) (2007). Rule 60(b)(6) allows the same for "[a]ny other reason justifying relief . . . ." N.C. Gen. Stat. § 1A-1, Rule 60(b)(6). This Court has previously held that "[a]n order granting or denying relief under North Carolina General Statutes § 1A-1, Rule 60(b) . . . will not be disturbed on appeal unless it appears that there was a substantial miscarriage of justice or that the decision is manifestly unsupported by reason." Hooper v. Pizzagalli Constr. Co., 112 N.C. App. 400, 407-08, 436 S.E.2d 145, 150 (1993), disc. review denied, 335 N.C. 770, 442 S.E.2d 516 (1994). Defendant contends the trial court abused its discretion in that it evaluated the motion as one brought pursuant to Rule 60(b)(3), which places a time limitation of one year on the bringing of the motion. Rule 60(b)(3) allows a court to grant relief from an order for "[f]raud . . ., misrepresentation, or other misconduct of an adverse party." N.C. Gen. Stat. § 1A-1, Rule 60(b)(3). Instead, defendant argues that the motion was required only to have been brought within "a reasonable time" under Rule 60(b)(4) or (b)(6). N.C. Gen. Stat. § 1A-1, Rule 60(b). Under the circumstances of this case, the motion would have been time barred under any of the subdivisions outlined in Rule 60(b).
Defendant waited eleven years after the entry of the consent order to bring his Rule 60 motion. This Court held in Nickels v. Nickels, 51 N.C. App. 690, 692, 277 S.E.2d 577, 578, disc. review denied, 303 N.C. 545, 281 S.E.2d 392 (1981), that "[w]hat constitutes a `reasonable time' depends upon the circumstances of the individual case." In Nickels, it was determined that twenty-three months was not a reasonable time in which to object to a consent judgment. In Prescott v. Prescott, 83 N.C. App. 254, 260, 350 S.E.2d 116, 120 (1986), this Court held that the trial court did not abuse its discretion by denying a party's Rule 60(b)(4) motion because four years had elapsed since the consent order was entered. See also Adams Creek Assocs. v. Davis, 186 N.C. App. 512, 520, 652 S.E.2d 677, 684 (2007) (holding that, even if motion construed as being brought under Rule 60, twenty months after entry of an order was not a reasonable time), supersedeas and disc. review denied, 362 N.C. 354, 662 S.E.2d 900 (2008). We conclude as a matter of law that a delay of eleven years is not "a reasonable time" within which to seek relief from the consent order, and we overrule these assignments of error.
Defendant next contends the trial court abused its discretion by entering the 8 August 2008 judgment before the conclusion of the trial. The record indicates that the judgment was signed on 7 August 2008 and filed at 8:18 a.m. on 8 August 2008. The transcript of the proceeding shows that defendant presented evidence on 8 August 2008. Defendant contends his due process rights to a full trial on the merits were thereby violated.
However, defendant has not assigned error to the entry of the judgment nor to the alleged violation of his due process rights. Nor does it appear from the record before us that he lodged any objection with the trial court relative to the timing of the entry of judgment. Appellate Rule 10 states that "the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal" and "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion . . . ." N.C.R. App. P. 10(a) and (b)(1) (2009) (amended Oct. 1, 2009). Moreover, this Court has held on numerous occasions that constitutional questions which are neither presented to nor ruled upon by the trial court will not be considered on appeal. Winebarger v. Peterson, 182 N.C. App. 510, 515, 642 S.E.2d 544, 547 (2007). The issue argued by defendant is not preserved and we will not address it.
Defendant next contends the trial court erred when it classified Boondocks and the land on which it is located as mixed assets. Equitable distribution decisions have been placed by the General Assembly firmly within the discretion of the trial court. It is well-settled that matters within the trial court's discretion are reviewed only for abuse of discretion. White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Equitable distribution requires that a trial court make findings of fact. N.C. Gen. Stat. § 50-20(j) (2007). A trial court's findings of fact will be upheld unless not supported by competent evidence. Gum v. Gum, 107 N.C. App. 734, 738, 421 S.E.2d 788, 791 (1992). Defendant first asserts that the court relied on incompetent evidence to conclude that Boondocks was a mixed asset, namely Plaintiff's Exhibit 62D. Plaintiff's Exhibit 62D is a set of undated, handwritten factual stipulations signed by both parties.
Generally, "[w]hen the parties to an action agree upon a matter of fact, they are bound by it, and it is not the duty of the judge to interfere, for he is presumed to be ignorant of the facts." Sanders v. Ellington, 77 N.C. 255, 256 (1877). Defendant argues, though, that the trial court should have inquired to make sure the parties understood the legal effects of their stipulations, and cites McIntosh v. McIntosh, 74 N.C. App. 554, 328 S.E.2d 600 (1985), for this proposition. We believe McIntosh is inapplicable on these facts. The holding of McIntosh was that any stipulation or agreement providing for the distribution of marital property must be in writing and be executed and acknowledged, or if it is oral, the court must read the terms to the parties and must assure itself that the parties understand the terms and legal affects of their agreement and are entering into the agreement of their own free will. The above inquiries must be made at the time the stipulations are entered into. McIntosh, 74 N.C. App. at 556, 328 S.E.2d at 602. The stipulations in this case were in writing, although not acknowledged. In addition, they were factual stipulations which assisted the trial court in making the distribution of marital property, but which did not themselves provide for the distribution of any property.
This case is more closely analogous to Eubanks v. Eubanks, 109 N.C. App. 127, 425 S.E.2d 742 (1993). In Eubanks, although stipulations concerning classification and valuation of property were not signed and acknowledged by the parties themselves, they were signed after negotiations by the parties' attorneys who conferred with their clients between meetings. In addition, the stipulations were offered by one party's counsel, and read into the record in the presence of both parties without objection. Eubanks, 109 N.C. App. at 130, 425 S.E.2d at 744. In the case sub judice, although the stipulations do not appear to be acknowledged, they were signed by the parties. Additionally, the stipulations were admitted into the record by the trial court in the presence of both parties and without objection from either party. Thus, we hold that Plaintiff's Exhibit 62D was competent evidence.
Defendant further contends the trial court erred in classifying Boondocks and the land on which it sits as mixed assets because plaintiff failed to show that Boondocks had a marital component. Defendant has assigned error to only a portion of the trial court's Finding of Fact 3. Notably, he has not assigned error to the portion of the finding which states, "the $23,000 was all that was ever paid to [Ed Hodges], and it was paid from money generated during the marriage." Thus, this portion of the finding of fact is binding on appeal. First Union Nat'l Bank v. Bob Dunn Ford, Inc., 118 N.C. App. 444, 446, 455 S.E.2d 453, 454 (1995). Defendant challenges no other findings of fact related to this issue in his brief. Therefore, we are limited to determining whether the trial court's findings of fact support its conclusions of law. Lange v. Lange, 167 N.C. App. 426, 428, 605 S.E.2d 732, 733 (2004).
The trial court found that (1) the purchase of one-half of Boondocks and the land on which it sits was financed pursuant to a note and deed of trust for $100,000, (2) that the total value of Boondocks and the land was $200,000, one-half of which was given to defendant as a gift, (3) that the transfer of the land and business occurred prior to the parties' marriage, and (4) that $23,000 of marital funds were used to make payments on the debt before the debt was forgiven. Based upon those findings, the trial court concluded that the $100,000 was defendant's separate debt. The court then concluded that, since the marital estate contributed $23,000 toward the $200,000 whole, the proportion of marital to separate is 11.5 percent to 88.5 percent. Thus, the findings support the trial court's conclusions and these assignments of error are overruled.
Defendant's final contention is that the trial court erred by treating distributions of Boondocks's post-date of separation profits as part marital and part separate. This issue is reviewed only for abuse of discretion. White, 312 N.C. at 777, 324 S.E.2d at 833. Defendant first misstates the trial court's conclusion. The trial court did not treat the monies used to purchase the properties after the date of separation as "retained earnings" from labor during the marriage. In fact, the findings make it clear that the trial court is assuming that all monies paid for the property were earned post-date of separation by Boondocks. Instead, the court in Conclusion of Law 15 states it is treating all net income after the date of separation as 11.5 percent divisible. Thus, the trial court appears to classify all the net income of Boondocks post-date of separation as passive income. N.C. Gen. Stat. § 50-20(b)(4)(c) (2007). Although defendant has assigned error to the conclusion in his Assignment of Error 12, he has not brought the assignment forward in his brief. Assignments of error which appear in the record but which are not argued in defendant's brief are deemed abandoned. N.C.R. App. P. 28(b)(6) (2009) (amended Oct. 1, 2009). In accordance with the conclusion that all net income post-date of separation had a divisible component, the trial court treated every dollar of net income generated by Boondocks after the date of separation as 88.5 cents separate and 11.5 cents divisible. "Under the source of funds rule, an asset purchased after separation with marital funds is marital property to the extent that marital funds were used toward its purchase." Freeman v. Freeman, 107 N.C. App. 644, 657, 421 S.E.2d 623, 630 (1992). By analogy, the same would be true of assets purchased with income with a divisible component. The trial court thus concluded that the property acquired after the date of separation using post-date of separation income of Boondocks which was in-part divisible was 11.5 percent divisible and 88.5 separate.[1] Thus, we overrule these assignments of error.

II.
Plaintiff's notice of cross-appeal appears in the record. However, no assignments of error from plaintiff appear in the record. Cross-appellants are also required to set out assignments of error in the record. Hurston v. Hurston, 179 N.C. App. 809, 811, 635 S.E.2d 451, 452 (2006) (dismissing cross-appeal for failure to set forth assignments of error). Plaintiff's cross-appeal is dismissed.
Affirmed.
Judges ROBERT C. HUNTER and BRYANT concur.
Report per Rule 30(e).
NOTES
[1] Although the trial court in Conclusion of Law 11 states that the property has a "marital" component, the logical determination based on Conclusion of Law 15 is that the court meant "divisible."