ROY LAVERN MAYO v. CITY OF WASHINGTON

No. 8010IC812

(Filed 7 April 1981)

1. **Master and Servant § 96.5– workers' compensation – sufficiency of evidence to support findings**

    The evidence in a workers' compensation hearing supported findings by the Industrial Commission that plaintiff policeman injured his knee on 29 November 1977 by accident arising out of and in the course of his employment and that injuries to plaintiff's right knee on 25 December 1977 and 3 January 1978 were the direct and natural results of the injury to the knee on 29 November 1977.

2. **Master and Servant § 72– workers' compensation – permanent partial disability**

    An award of compensation for a ten percent permanent partial disability of plaintiff's right knee was supported by medical reports which were introduced into evidence.

APPEAL by defendant from an order and award of the North Carolina Industrial Commission filed 20 May 1980. Heard in the Court of Appeals 11 March 1981.

Plaintiff instituted this proceeding seeking compensation for injury to his right knee allegedly sustained while working as a police officer for the defendant, the City of Washington, North Carolina. The parties stipulated that the provisions of the Workers' Compensation Act controlled the action, that an employer-employee relationship existed between the parties, that the plaintiff's average weekly wage was $159.39 and that medical

reports marked as Exhibits One through Ten were to be entered into the record. After a hearing, Deputy Commissioner John Charles Rush made findings of fact which provided, in pertinent part, as follows:

3. Sometime in June, 1976, the plaintiff was participating in a softball game as a member of the Beaufort County Law Enforcement team. During the game the plaintiff felt a pop in his right knee as he was running from first base to second base.

4. The plaintiff did not have any further difficulty with his right knee until about early December 1976. Sometime in about early December, 1976, the plaintiff's right knee began to lock. Dr. S.L. Crisp, an orthopedic surgeon, operated on the plaintiff's knee for a tear of the right medial meniscus in December 1976. The plaintiff made a satisfactory recovery from the operation.

. . .

7. On November 29, 1977, the plaintiff was on a routine patrol as a police officer for the defendant employer. Sometime in the evening he responded to a radio dispatch call by driving the police car to the designated location of a stolen truck. Upon arriving at the location he saw the stolen truck and began to follow it. The truck came to an abrupt stop behind a department store in a shopping center. The driver of the truck and a passenger in the truck jumped from the truck and ran. The plaintiff stopped the police car and ran across the parking lot and into the department store after the passenger. While running after the passenger in the department store the plaintiff caught his right foot under a counter which caused his right knee to snap. The plaintiff managed to apprehend the passenger in the department store.

8. The plaintiff received treatment for his right knee condition at the emergency room of the local hospital immediately after he apprehended the passenger in the truck. He reported the injury to the defendant employer on November 30, 1977, and continued his work with the defendant employer on a regular basis.

9. The plaintiff had no difficulty with his right knee from the time Dr. S.L. Crisp discharged him after the December 1976 operation until he caught his right foot under the counter on November 29, 1977.

10. On December 25, 1977, the plaintiff was on a routine patrol as a police officer for the defendant employer. Sometime during that work shift the plaintiff parked the police car and got out by opening the left front car door. When the plaintiff turned to close the car door his right knee locked. Another police officer transported the plaintiff to the emergency room of the local hospital.

11. The plaintiff saw Dr. Paul Horton at the emergency room on December 25, 1977 and told the doctor that he injured his right knee on the job about a month prior to December 25, 1977 and reinjured his right knee on December 25, 1977 when he stepped wrong and twisted it. He also told Dr. Horton that he had a medial meniscectomy on some prior occasion. Dr. Horton felt the plaintiff had an internal derangement of the right knee and referred him to Dr. Albert Dow and/or Dr. S.L. Crisp.

. . .

13. On January 3, 1978, the plaintiff was performing paper work duties as a police officer for the defendant employer. While the plaintiff was in the office his right knee locked when he turned to get some papers from his desk.

14. The plaintiff saw Dr. S.L. Crisp on January 4, 1978. Dr. Crisp described the plaintiff's condition as a recurrent locking of the right knee and concluded the plaintiff had a tear of the regrowth of the medial meniscus. The doctor admitted the plaintiff to the hospital on February 8, 1978 and peformed [sic] a right medial meniscectomy on February 9, 1978. After Dr. Crisp discharged the plaintiff from the hospital on February 12, 1978, he followed the plaintiff in his medical office periodically through April 18, 1978. Dr. Crisp felt the plaintiff could return to work on April 20, 1978.

15. In the opinion of Dr. S.L. Crisp, the plaintiff had a satisfactory recovery from the December 1976 right knee operation. Dr. Crisp felt the plaintiff's right knee had sub-

stantially or completely recovered from the December 1976 operation prior to the second knee injury and that the second knee injury was a new injury.

16. Dr. S.L. Crisp did not think the plaintiff's right leg would hinder him in performing the duties of a police officer.

17. Dr. S.L. Crisp gave the plaintiff a 10% permanent partial disability rating of the right knee.

.   .   .

19. There was a showing of an interruption of the plaintiff's regular work routine on November 29, 1977. The plaintiff did in fact on that occasion sustain an injury by accident arising out of and in the course of his employment. Said injury by accident resulted in a new injury to the plaintiff's right knee.

20. The injuries to the plaintiff's right knee on December 25, 1977 and January 3, 1978, were the direct and natural result of the injury by accident on November 29, 1977.

.   .   .

22. The plaintiff sustained a 10% permanent partial disability of the right leg as a result of the injury by accident arising out of and in the course of his employment on November 29, 1977, and as a result of the subsequent injuries he sustained on December 25, 1977 and January 3, 1978.

Based on these findings of fact, Deputy Commissioner Rush concluded as a matter of law that plaintiff had sustained an injury by accident arising out of and in the course of his employment on 29 November 1977; that said injury had been a new injury to plaintiff's right knee; that the 25 December 1977 and 3 January 1978 injuries to plaintiff's right knee had been the direct and natural results of the injury by accident on 29 November 1977 and that plaintiff was entitled to compensation for a ten percent permanent partial disability of his right leg.

Defendant appealed. The Full Commission found that there was competent evidence of record to support in every aspect Deputy Commissioner Rush's opinion and award and adopted

and affirmed his opinion and award. From the opinion and award of the Full Commission, defendant appealed to this Court.

*Carter, Archie, Grimes & Hassell by Samuel G. Grimes, for the plaintiff-appellee.*

*McMullan & Knott by Lee E. Knott, Jr., for the defendant-appellant.*

MARTIN (Robert M.), Judge.

[1] Defendant first contends that the evidence in the record does not support the finding by the Commission that the injury for which the award was given resulted from an accident arising out of and in the course of the plaintiff's employment. The Workers' Compensation Act does not provide compensation for injury, but only for injury by accident. *Hargus v. Foods, Inc.*, 271 N.C. 369, 156 S.E. 2d 737 (1967). The defendant concedes in its brief that the evidence is sufficient to support a finding that the plaintiff injured his knee on 29 November 1977 by accident arising out of and in the course of his employment. The defendant argues, however, that the evidence is not sufficient to support a finding that the injuries to the plaintiff's right knee on 25 December 1977 and 3 January 1978 were the direct and natural results of the injury to the knee on 29 November 1977. We disagree.

The extent of the scope of review by this Court of an award of compensation by the Industrial Commission has often been defined by the courts of this State. It is aptly stated in *Click v. Freight Carriers*, 300 N.C. 164, 166, 265 S.E. 2d 389, 390-1 (1980) by Justice Exum, speaking for the Supreme Court, as follows:

> It is not for a reviewing court, however, to *weigh* the evidence before the Industrial Commission in a workmen's compensation case. By authority of G.S. 97-86 the Commission is the sole judge of the credibility and weight to be accorded to the evidence and testimony before it. Its findings of fact may be set aside on appeal only when there is a complete lack of competent evidence to support them. *Anderson v. Construction Co.*, 265 N.C. 431, 144 S.E. 2d 272 (1965). Thus, if the totality of the evidence, viewed in the light most favorable to the complainant, tends directly or by reasonable inference to support the Commission's find-

ings, these findings are conclusive on appeal even though there may be plenary evidence to support findings to the contrary. *Hollman v. City of Raleigh*, 273 N.C. 240, 159 S.E. 2d 874 (1968); *Keller v. Wiring Co.*, 259 N.C. 222, 130 S.E. 2d 342 (1963).

Examining the evidence before the Commission on the issue of whether the injury resulted from an accident arising out of the course of the plaintiff's employment, we hold that there was competent evidence in the record supporting the finding that "[t]he injuries to the plaintiff's right knee on December 25, 1977 and January 3, 1978, were the direct and natural result of the injury by accident on November 29, 1977." Dr. Horton, the physician who examined plaintiff after the 25 December 1977 accident, stated in Exhibit Two that plaintiff "[w]as injured on the job a month ago, was reinjured today." This was sufficient medical evidence to establish a causal connection between the 29 November accident and the subsequent injuries. In addition, plaintiff's testimony also links his subsequent injuries to the 29 November accident at work. Plaintiff testified that while pursuing a fleeing suspect in a department store on 29 November 1977, he "got [his] right foot underneath the counter . . . which caused the knee to snap backwards and it popped, something inside the knee itself." Plaintiff also testified that "[r]ight after the incident happened," he consulted a physician in a hospital emergency room. He further testified:

> I had some problems with the same knee on Christmas Day of 1977. I just got out of the police car I was operating and turned to close the door; and when I turned to close the door, the knee locked. . . . I couldn't straighten it out. . . . I was not able to unlock my knee right then. I believe in a couple of days it unlocked itself. . . . I had another incident in January . . . on or about January 3. It was basically the same. I was in the office at this time and I just returned to — reached for some papers off my desk and when I turned, the knee locked again.

Plaintiff's injury was diagnosed as a tear of the right medial meniscus. The descriptions of the sensations plaintiff experienced supports the finding that the tear occurred on 29 November (the knee snapped backwards and popped, "something in the knee itself") and that the subsequent incidents resulted

from that tear ("the knee locked," "the knee locked again"). The fact that other evidence in the record does not support such a finding, and seems to contradict it, is of no consequence to this appeal, as the duty of this Court in reviewing the validity of the award on appeal is to ascertain whether there is *any* competent evidence in the record to support the finding. *Click v. Freight Carriers, supra; Gamble v. Borden, Inc.*, 45 N.C. App. 506, 263 S.E. 2d 280, *rev. denied*, 300 N.C. 372, 267 S.E. 2d 675 (1980).

[2]  Defendant also contends that there is insufficient evidence in the record to support the award of ten percent permanent partial disability to the plaintiff. Again, we are guided by the principles enunciated in *Click v. Freight Carriers, supra*. The record reveals that Dr. Crisp stated in Exhibits Five, Six and Seven that plaintiff had sustained a ten percent permanent partial disability as a result of his injury. As this constitutes competent medical evidence in the record to-support the Commission's finding that plaintiff sustained a ten percent permanent partial disability of his right leg, this finding is conclusive on appeal and cannot be set aside by this Court. *Id.; Gamble v. Borden, Inc., supra.*

We find, therefore, that the evidence was sufficient to support the Industrial Commission's findings of fact and that these findings justify the Commission's award. Therefore we affirm the award.

Affirmed.

Chief Judge MORRIS and Judge WHICHARD concur.