EDWARD HORNE, EMPLOYEE, PLAINTIFF v. MARVIN L. GOODSON LOGGING CO., EMPLOYER; SELF-INSURED (HEWITT, COLEMAN & ASSO., INC.), DEFENDANT

No. 8610IC214

(Filed 21 October 1986)

**Master and Servant § 93.3 — workers' compensation — testimony by plaintiff's medical expert ruled incompetent — error**

In a workers' compensation case where plaintiff employee contended that he suffered a permanent disabling brain injury, the Industrial Commission erred in finding that testimony by plaintiff's psychology expert was not competent and in excluding it from consideration.

Judge MARTIN concurs in the result.

Judge PHILLIPS dissenting.

APPEAL by plaintiff from the North Carolina Industrial Commission. Opinion and award filed 6 March 1985. Heard in the Court of Appeals 21 August 1986.

Plaintiff appeals from an opinion and award of the Industrial Commission denying plaintiff an award for permanent, disabling brain injury. The claim was heard before Deputy Commissioner Lawrence A. Shuping. Shuping entered an opinion and award in which he found the following facts:

Plaintiff was employed as a truck driver by defendant employer. On 21 July 1980, while pulling down on a chain used to secure a load of logs on his vehicle, a log weighing approximately 1,000 pounds fell 14½ feet striking plaintiff on the head. Plaintiff sustained injuries resulting in a 20 percent permanent partial disability of his back. Plaintiff also sustained permanent and disfiguring scars on his head for which he was awarded $2,500.00. Shuping found that plaintiff has not suffered any type of permanent, disabling brain injury and denied him compensation for a brain injury. Plaintiff appealed to the Full Commission which adopted the opinion of the Deputy Commissioner with one Commissioner dissenting. From the opinion and award of the Commission, plaintiff appeals.

*James G. Gillespie, Jr. for plaintiff appellant.*

*Hedrick, Eatman, Gardner & Kincheloe, by Mel J. Garofalo, for defendant appellee.*

*Ennis, Friedman & Bersoff, by Donald N. Bersoff; Tharrington, Smith & Hargrove, by Ann L. Majestic, for Amicus Curiae.*

ARNOLD, Judge.

Plaintiff contends that the denial of permanent partial disability was not based on substantial evidence, was not adequately supported and was in error as a matter of law. We disagree.

The well-established rule concerning the role of the appellate court in reviewing an appeal from the Industrial Commission is

that the Court is limited to a determination of (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are supported by the findings. *Guy v. Burlington Industries*, 74 N.C. App. 685, 329 S.E. 2d 685 (1985).

Dr. Robert Wilfong, qualified as an expert in neurosurgery, testified that plaintiff's neurological examination was normal and that there was no permanent disability to the brain. This is competent evidence sufficient to support the finding that plaintiff has not suffered disabling, permanent brain injury.

Plaintiff also contends that competent, credible evidence in the form of testimony by Dr. Antonio Puente was prejudicially excluded from consideration.

The case was heard before Deputy Commissioner Shuping. However, the testimony of Dr. Puente was heard by Deputy Commissioner Morgan Scott. Dr. Puente testified extensively but portions of his testimony were objected to by defendant and sustained by Deputy Commissioner Scott. After sustaining an objection to Dr. Puente's qualifications to render an opinion, Deputy Commissioner Scott stated, "It's not my case, however, and I will defer to what Deputy Commissioner Shuping wants to do with the response, and I will allow him to answer for the record." Although sustaining defendant's objections during the course of Dr. Puente's testimony, Deputy Commissioner Scott allowed Dr. Puente to testify for the record so that Deputy Commissioner Shuping could determine whether to admit the testimony.

It is clear that Deputy Commissioner Shuping considered the testimony and found it to be incompetent and incredible. Deputy Commissioner Shuping found that "to the extent that the testimony of Dr. Puente, which if believed, would tend to establish that he has [such an injury], said testimony is neither accepted as competent nor credible to do so but rather, is in direct conflict with the competent and credible medical testimony of Dr. Wilfong that no such permanent brain injury resulted." Deputy Commissioner Shuping erred in concluding that Dr. Puente's testimony was "incompetent." It reasonably could be argued that the Deputy Commissioner clearly considered this testimony, found it to be incredible, and simply chose not to believe it. However, since it was error to characterize Dr. Puente's testimony as incompetent,

we remand the cause to the Industrial Commission for consideration of the credibility of said testimony.

The Industrial Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Mayo v. City of Washington*, 51 N.C. App. 402, 276 S.E. 2d 747 (1981). We express no opinion as to the credibility of Dr. Puente's testimony and leave that determination to the Commission.

Reversed and remanded.

Judge MARTIN concurs in the result.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

Though I agree that the case must be remanded to the Industrial Commission the narrow scope of the remand that the majority directs is not in keeping with the law and I dissent from it.

The facts found by the Commission in this instance are not conclusive, as is usually the case when supported by competent evidence, because they were clearly found under a misapprehension of law as to the admissibility of plaintiff's evidence tending to show that he has a compensable brain injury. *Whitted v. Palmer-Bee Co.*, 228 N.C. 447, 46 S.E. 2d 109 (1947). Furthermore, nothing in the record suggests to me that either Deputy Commissioner Shuping or the Commission majority considered, at least in any meaningful sense, the competent and pertinent neuropsychological testimony of Dr. Puente. Rather, the record indicates that any consideration given to the testimony was utterly meaningless because it was preceded by the erroneous determination that only doctors of medicine can make reliable deductions as to conditions in the brain. No other possible basis for ruling the testimony incompetent is suggested. The witness was well qualified to testify; his opinions were based upon evidence tending to show that plaintiff's brain is gravely impaired due to some cause; no cause of the impairment other than the one thousand pound log striking him on the head is suggested by the evidence; and none of the evidence tending to show that plaintiff's brain has been damaged was addressed by any of the Commission's findings of fact.

The general utility and reliability of expert psychological analysis and testing in evaluating conditions of the brain is recognized alike by the law and the medical profession. Many medical doctors consult as readily with psychologists in cases of suspected brain injury as they order X-rays in cases of suspected bone fractures, or laboratory tests in cases of suspected liver damage. This is because psychology is the study of the human mind and how it works and because the brain controls conduct, thought, speech, feelings and judgment no less than it does limbs and muscles. The circumstances of this case are clearly suitable for such expert psychological analysis. A 1,000 pound log struck plaintiff on the head with such compressive force that it severely damaged several teeth and fractured a bone in his back 18 or more inches from the point of impact. That this great force *could* have injured some of the delicate membranes of the brain is obvious, even though the bones surrounding the brain were not fractured and the *physical* examination and other tests conducted by Dr. Wilfong a year or so after the accident did not indicate any injury to the brain. Conditions in the brain can be indicated by conduct, feelings, and thought, as well as by X-rays and scanning devices, and plaintiff's conduct, feelings and thought since the log struck him on the head, according to uncontradicted evidence, indicate that his brain is gravely impaired.

There is evidence that: Before his injury plaintiff was a normal, sociable, outgoing, even tempered person, who rarely had a headache, slept well, and enjoyed his family and others. Since being hit with the log and for no other apparent reason, plaintiff has been depressed and withdrawn; his nightly sleep has been regularly disturbed and insufficient; he has often lost his temper for no rational reason, even to the point of thinking about running his truck off the road or into cars on the road that delay him; he often has intense headaches that require him to walk the floor for hours if at night and to pull his logging truck off to the side of the road if by day; he occasionally has hallucinations, thinking that he hears non-existent things such as a baby crying in the night; and he no longer likes to associate with others, including his own wife and child. Though this evidence, along with the psychologist's expert opinion about it, is the basis for plaintiff's claim that he has a compensable brain injury the Commission made no findings about the truth or falsity of any of it. Thus, the case

presented to the Commission has not been decided, and it will not be properly decided, in my view, until findings from the competent evidence are made as to whether plaintiff's emotional and mental health, personality and conduct have in fact changed since the log hit him on the head and, if so, what probably caused the change.

My vote is to vacate the decision and to remand to the Commission for a redetermination of the brain injury issue after considering all the competent evidence presented "in its true legal light." *Hanford v. McSwain*, 230 N.C. 229, 233, 53 S.E. 2d 84, 87 (1949).