***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the brief and oral argument before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representative; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner DeLuca.
 ***********
The undersigned finds as fact and concludes as a matter of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all times relevant to this case.
3. American International Group (AIG) is the carrier on the risk in this claim and Gallagher Bassett Group is the third-party administrator.
4. Plaintiff claims that he suffered a specific traumatic incident resulting in a back injury on May 30, 2002. The claim was denied by a Form 61.
5. Plaintiff's average weekly wage is $457.53 and his weekly compensation rate is $305.04.
6. The parties identified the following contested issues:
a. Whether plaintiff suffered an injury by accident or specific traumatic incident to his back arising out of and in the course of his employment with defendant; and
b. If so, what benefits is plaintiff entitled to recover?
7. Plaintiff received short-term disability payments for 20 weeks for the period of December 22, 2002, through May 10, 2003, for a total amount of $5,300.00. Defendants are entitled to a credit of this amount against any award in this matter.
 ***********
Based upon the foregoing stipulations and all the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a 55 years old high school graduate. He attended both a community college and a technical college, where he studied air conditioning systems and automobile mechanics, respectively.
2. Since completing high school, plaintiff has worked in the areas of mechanics, shipping and receiving.
3. Plaintiff's maintenance position with defendant-employer, a retirement community, required painting, plumbing, and lifting items that weighed as much as 50 to 100 pounds on a regular basis.
4. Before working for defendant-employer, plaintiff was injured when a truck cab fell on him. Plaintiff was out of work for almost one year and received workers' compensation benefits for that injury.
5. On or about May 30, 2002, plaintiff alleges that he strained his back while trying to move a boulder in a creek bed behind the home of one of the residents of defendant-employer. At the hearing before the Deputy Commissioner, plaintiff testified that when he finished attempting to move the boulders on the day in question, he could hardly stand; that he told several people of his back pain during the months that followed; and that he did not realize the seriousness of his injury for several months.
6. At the hearing before the Deputy Commissioner, Mr. Horton, plaintiff's former co-worker, testified that plaintiff told him on or about May 30, 2002, that he had hurt his back the day he was moving the boulders.
7. Following the alleged incident in May 2002, it was not until September 30, 2002, that plaintiff first saw a doctor, Dr. William G. Larsen, a family practitioner. The history that plaintiff reported to Dr. Larsen contains the first mention of back pain, but no mention of a work-related injury.
8. Plaintiff's next doctor's visit was on October 3, 2002, to Dr. Catherine Norton, a family practitioner. The history on that date states "patient is here with several day history of severe left hip pain aggravated by walking, getting progressively worse, without any history of injuries." There is no mention of back pain.
9. Plaintiff presented to Dr. Norton again on October 16, 2002, complaining of back pain. Dr. Norton's history indicated, "he works for the senior citizens' center and he lifted a heavy table two months ago. He denies any other injuries." There is no mention of the alleged lifting incident in the creek in May 2002.
10. Plaintiff's first mention to a medical provider that the creek incident might have caused his injury came when he saw Dr. Patricia Shannon, a physiatrist, on November 6, 2002.
11. In late October or early November of 2002, plaintiff told Clay Basham, his supervisor, that he thought he had hurt his back earlier in the year while moving boulders in the creek. The timing of this conversation coincided with plaintiff's commencement of treatment with Dr. Shannon.
12. Following his first visit to Dr. Shannon on November 6, 2002, plaintiff underwent a nerve root block by Dr. Ho, a radiologist, on November 26, 2002. On December 12, 2002, he underwent a second nerve root block by Dr. Vandernoord, an orthopedic specialist. On December 13, 2002, plaintiff returned to Dr. Shannon, who recommended that he proceed with a third nerve root block. Dr. Shannon scheduled plaintiff for a workup for possible surgical intervention and recommended light duty work, including no lifting greater than five pounds, no pulling or pushing, bending, stooping, squatting or kneeling and no pushing or pulling greater than ten pounds.
13. On January 9, 2003, Dr. Daniel Murrey, an orthopedic specialist, examined plaintiff. Dr. Murray's initial impression was lumbar spinal stenosis with left L5 radiculopathy. Dr. Murrey recommended surgery and performed an L3 to L5 decompression and left L4/5 microdiscectomy. On February 4, 2003, plaintiff presented to Dr. Murrey who noted that plaintiff had a negative straight leg raise and normal motor strength.
14. Plaintiff did not return to Dr. Murrey after April 3, 2003. Dr. Murrey testified that based on his last file note, he "would probably have written him to go back in on light duty."
15. Dr. Murrey testified that given plaintiff's disk herniation and two level decompression he "would probably give him a rating in the range of 15 to 20 percent." Dr. Murrey further testified that someone in plaintiff's condition should be able to resume light to medium duty work although, in some cases, heavy duty work may be possible. Dr. Murrey indicated that if the injury were deemed compensable, he would recommend a work-conditioning program followed by a functional capacity evaluation.
16. Dr. Murrey further testified that if it were true that plaintiff had no symptoms before the reported episode lifting boulders and that symptoms began at that time, he would have to assume that the incident aggravated an underlying previously asymptomatic condition. Similarly, Dr. Murray stated that if the plaintiff's history were incorrect, his conclusion regarding causation would also be different.
17. At the hearing before the Deputy Commissioner, plaintiff testified that he knew about defendant-employer's policy that required workplace injuries to be immediately reported to the worker's supervisor.
18. Ellen Zoutewelle, HR director for defendant-employer, first received notice of the alleged incident in the creek on January 7, 2003, when plaintiff contacted her.
19. Plaintiff's last day of work for defendant-employer was on December 14, 2003. He has not worked for this employer or any other employer since that date.
20. In addition to receiving short-term disability benefits, as stipulated above, plaintiff has also received 26 weeks of unemployment benefits at $240.00 per week.
21. Plaintiff has applied for work with other employers, including construction companies, where he applied for driving jobs. In applying for unemployment, he indicated that he was ready and able to return to work.
22. The greater weight of the competent evidence of record establishes that plaintiff did not injure his back moving boulders on or about May 30, 2002.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has the burden of showing that the injury complained of resulted from an accident arising out of and in he course of the employment. Henry v. A.C. Lawrence Leather Co., 231 N.C. 477, 57 S.E.2d 760
(1950).
2. Plaintiff has the burden of proving both the existence of his disability and its degree. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982).
3. The Industrial Commission is the sole judge of the credibility of witnesses and the weight given to their testimony and may accept or reject any or all of the testimony of a witness. Mayo v. City ofWashington, 51 N.C. App. 402, 276 S.E.2d 747 (1981).
4. Plaintiff did not sustain an injury by accident arising out of and in the course and scope of his employment with defendant-employer on or about May 30, 2002. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits for his alleged injury of May 30, 2002, is denied.
2. Defendants shall pay the costs.
This the ___ of March 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/__________________ BERNADINE S. BALANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER