WILLIAM DAVIS, EMPLOYEE, PLAINTIFF-APPELLEE v. HARRAH'S CHEROKEE CASINO, EMPLOYER, LEGION INSURANCE COMPANY, (NOW ASSIGNED TO THE NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION), CARRIER, DEFENDANTS-APPELLANTS

No. COA05-1153

(Filed 1 August 2006)

**1. Workers' Compensation— aggravation of existing back injury—fall at home not an intervening event**

A fall at home by a workers' compensation plaintiff aggravated his existing compensable back injury and was not an intervening event that barred further compensation.

**2. Workers' Compensation— findings—more than recitation of evidence required**

A workers' compensation finding was adequate where the last sentence reflected the Industrial Commission's consideration of the evidence. Recitations of a physician's testimony and written surgery notes would not in themselves constitute a finding of fact.

**3. Workers' Compensation— findings—general and specific— propensity to degenerative back disease following surgery**

There was no evidence in the record to support the Industrial Commission's specific finding about this plaintiff's propensity to develop degenerative disease following back surgery, although there was competent evidence to support the Industrial Commission's general statement of such a propensity.

**4. Workers' Compensation— back injury—degenerative changes following surgery—causation—findings**

The evidence supported the Industrial Commission's finding that the narrowing of the spinal canal of a workers' compensation plaintiff with a back injury was caused by the prominence of a primary spinal ligament (the ligamentum flavum) and scarring from surgery.

**5. Workers' Compensation— back injury—second surgery compensable—supported by findings**

The Industrial Commission' conclusion that a workers' compensation plaintiff's second back surgery was a consequence of his compensable injury was supported by the findings. Testimony about degenerative changes was not addressed, given the viable finding that plaintiff's stenosis was caused by scar tissue from his first surgery.

**6. Workers' Compensation— back injury—release for work but not from medical care—continued pain—findings supported by evidence**

Findings in a workers' compensation back case that plaintiff had been released for work but not from medical care and that he continued to suffer pain were supported by medical notes and testimony.

**7. Workers' Compensation— credibility—Industrial Commission as sole judge**

The Industrial Commission is the sole judge of credibility in workers' compensation cases. A finding that plaintiff's testimony was credible was upheld.

**8. Workers' Compensation— ongoing disability—findings**

The Industrial Commission properly concluded that a workers' compensation plaintiff suffered an ongoing disability. The Commission found that a physician had written plaintiff out of work, that he was injured in a fall on ice, that the medical testimony was that a person who has undergone spinal surgery is more likely to suffer worse symptoms from an injury to the back and that plaintiff's activity was limited by pain. Plaintiff testified about the effect the pain had on his ability to work as well as his qualification for social security disability, and the Commission found plaintiff's testimony to be credible and sufficient to prove the ongoing nature of his disability.

Judge STEPHENS dissenting.

DAVIS v. HARRAH'S CHEROKEE CASINO

[178 N.C. App. 605 (2006)]

Appeal by defendants from opinion and award entered 20 June 2005 by the North Carolina Industrial Commission. Heard in the Court of Appeals 19 April 2006.

*The Law Offices of Lee and Smith, P.A., by D. Andrew Turman, for plaintiff-appellee.*

*Hedrick Eatman Gardner & Kincheloe, L.L.P., by C.J. Childrers, for defendants-appellants.*

McGEE, Judge.

William Davis (plaintiff) worked as a games performance technician for Harrah's Cherokee Casino (Harrah's). Plaintiff's job duties included repairing and performing preventative maintenance on gaming machines. Plaintiff was lifting a thirty-five-pound monitor out of a slot machine on 26 May 2001 when he felt a pain in his lower back. Plaintiff did not report the injury and continued to work until 26 June 2001, when he sought medical attention for recurring pain in his left leg. Plaintiff was treated by a chiropractor who ordered an MRI scan that revealed a herniated disc in plaintiff's back. Dr. John M. Silver (Dr. Silver) performed back surgery on plaintiff on 7 September 2001. Plaintiff returned to work at Harrah's on 31 October 2001 and continued working until 27 December 2001.

Plaintiff called Dr. Silver's office on 7 November 2001 complaining of pain in his left leg. Plaintiff was prescribed steroid medication. Plaintiff underwent an MRI scan of his back on 20 December 2001, which showed scar tissue around a nerve and "some degenerative changes."

At a follow-up visit with Dr. Silver on 31 December 2001, plaintiff reported he had slipped and fallen onto his back while walking up a ramp at his home. Plaintiff told Dr. Silver he had experienced significant pain in his back and down both legs since his fall. Dr. Silver wrote plaintiff out of work from 27 December 2001 until 1 February 2002. Dr. Silver ordered a myelogram and CAT scan on 2 April 2002, which revealed what Dr. Silver deemed "appropriate degenerative changes for [plaintiff's] age and the postoperative changes[.]" Dr. Silver performed a second back surgery on plaintiff on 22 April 2002. The purpose of the second surgery was to decompress nerves in plaintiff's spinal canal, which had become narrowed. Following his second surgery, plaintiff was kept out of work for a period of time that exhausted his leave under the Family Medical Leave Act. Thereafter, plaintiff was fired by Harrah's for not returning to work.

A hearing on the matter was held before a deputy commissioner on 23 January 2004. The deputy commissioner concluded that plaintiff sustained a compensable injury by accident on 26 May 2001, but that plaintiff had failed to show that his ongoing back problems after October 2001 were related to the 26 May 2001 compensable injury. Plaintiff appealed to the Industrial Commission (the Commission), which heard the matter on 17 May 2005. In an opinion and award filed 20 June 2005, the Commission modified and affirmed the opinion and award of the deputy commissioner. The Commission concluded that plaintiff's second surgery on 22 April 2002 was a consequence of plaintiff's compensable 26 May 2001 injury. The Commission also concluded that plaintiff's slip and fall in late 2001 aggravated the May 2001 injury, and that the pain and medical consequences plaintiff suffered were a "natural progression" of the May 2001 injury. The Commission awarded plaintiff ongoing medical and indemnity benefits from 27 December 2001 forward. Defendants appeal.

Defendants assign error to four findings of fact, arguing the findings are not supported by competent evidence. Defendants assign error to five conclusions of law, arguing the conclusions are not supported by competent findings of fact and are erroneous as a matter of law.

Defendants concede that plaintiff suffered a compensable injury on 26 May 2001. They further concede their responsibility to compensate plaintiff for medical expenses related to his 7 September 2001 surgery and for lost wages from 26 June 2001 through 31 October 2001. The issues on appeal are: (1) whether plaintiff's slip and fall in late 2001 was an intervening event sufficient to bar plaintiff from further compensation after the fall; (2) whether plaintiff's surgery on 22 April 2002 was a consequence of plaintiff's compensable May 2001 injury; and (3) whether plaintiff proved an ongoing disability after returning to work following his September 2001 surgery.

Our Court reviews decisions of the Commission to determine "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000) (citing *Adams v. AVX Corp.*, 349 N.C. 676, 509 S.E.2d 411 (1998)). The Commission's findings of fact are conclusive on appeal if supported by competent evidence, even when there is evidence to support contrary findings. *Id.*

at 115, 530 S.E.2d at 552-53. "[S]o long as there is some evidence of substance which directly or by reasonable inference tends to support the findings, this Court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary." *Shah v. Howard Johnson*, 140 N.C. App. 58, 61-62, 535 S.E.2d 577, 580 (2000), *disc. review denied*, 353 N.C. 381, 547 S.E.2d 17 (2001) (internal quotation omitted). Moreover, " '[t]he evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence.' " *Poole v. Tammy Lynn Ctr.*, 151 N.C. App. 668, 672, 566 S.E.2d 839, 841 (2002) (quoting *Adams* at 681, 509 S.E.2d at 414). The Commission's conclusions of law are reviewed *de novo* by our Court. *Grantham v. R.G. Barry Corp.*, 127 N.C. App. 529, 534, 491 S.E.2d 678, 681 (1997), *disc. review denied*, 347 N.C. 671, 500 S.E.2d 86 (1998).

## I. Plaintiff's slip and fall

[1] Defendants concede their responsibility for plaintiff's lost wages from 26 June 2001 through 31 October 2001, the period plaintiff was out of work due to his first surgery. Defendants contend that plaintiff's fall in late 2001 barred any recovery by plaintiff thereafter. In concluding that plaintiff's fall was not a bar to recovery, the Commission relied upon our Court's decision in *Horne v. Universal Leaf Tobacco Processors*, 119 N.C. App. 682, 459 S.E.2d 797, *disc. review denied*, 342 N.C. 192, 463 S.E.2d 237 (1995). We held in *Horne*:

> The aggravation of an injury is compensable if the primary injury arose out of and in the course of employment, and the subsequent aggravation of that injury is a natural consequence that flows from the primary injury. Unless the subsequent aggravation is the result of an independent, intervening cause attributable to [a] claimant's own intentional conduct, the subsequent aggravation of the primary injury is also compensable.

*Id.* at 685, 459 S.E.2d at 799 (internal citation omitted). In *Horne*, the claimant suffered a compensable back injury while removing sheets of tobacco from a conveyer belt, and subsequently was involved in an automobile accident. *Id.* at 683, 459 S.E.2d at 798. Our Court concluded the automobile accident was compensable because it was an aggravation of the claimant's prior compensable injury, and there was no evidence the accident was attributable to the claimant's own intentional conduct. *Id.* at 687, 459 S.E.2d at 801.

In the present case, the Commission applied *Horne* to conclusions six and seven, which defendants contest:

6. Also at issue is whether the fall that plaintiff suffered outside his home in late November or early December 2001 was an intervening causal event sufficient to bar plaintiff from further compensation. For this to be the case, any injury resulting from [plaintiff's] fall would have to be entirely independent of the compensable injury. . . . The slip and fall on ice aggravated the earlier injury and the pain and medical consequences were a natural progression of the early injury.

7. There has been no allegation that plaintiff's slip and fall on the ice was in any way of his own volition. . . .

First, as defendants do not present any argument in their brief regarding conclusion number seven, their assignment of error to conclusion seven is deemed abandoned. *See* N.C.R. App. P. 28(b)(6). Accordingly, conclusion of law number seven is binding on appeal.

In conclusion six, the Commission's determination that plaintiff's slip and fall aggravated plaintiff's compensable injury is supported by the Commission's uncontested findings five and six. In finding five, the Commission found as fact that plaintiff complained of pain in his left leg before the fall, and then complained of pain in both legs after the fall. In finding six, the Commission found as fact that plaintiff "was in increased pain from the slip on ice." These uncontested findings support the Commission's conclusion that plaintiff's fall aggravated his compensable back injury.

Under *Horne*, an aggravation of a compensable injury is compensable "[u]nless [it] is the result of an independent intervening cause attributable to [a] claimant's own intentional conduct[.]" *Horne* at 685, 459 S.E.2d at 799. As stated above, the Commission determined there was no allegation that plaintiff's slip and fall was in any way a result of his own intentional conduct. Accordingly, the Commission was correct, under *Horne*, in determining that plaintiff's disability resulting from the slip and fall, which aggravated the May 2001 injury and was not the result of plaintiff's own intentional conduct, was compensable. Plaintiff's slip and fall in late 2001 was not an intervening event that barred plaintiff from further compensation. Defendants' assignments of error pertaining to conclusions six and seven are overruled.

**DAVIS v. HARRAH'S CHEROKEE CASINO**

[178 N.C. App. 605 (2006)]

II.  Plaintiff's second surgery

[2] Defendants assign error to the Commission's finding number fourteen:

> 14. While Dr. Silver opined at his deposition that the second surgery was primarily to correct degenerative changes, he did indicate that changes seen on the MRI relating to scarring and fibrosis around the nerve were related to plaintiff's first surgery. The report from the April 1, 2002, MRI indicated moderate to severe stenosis at the same level as the earlier surgery *due to the prominence of the ligamentum flavum and the scar tissue.* Furthermore, Dr. Silver's actual surgery notes reveal several instances of recisioning scar tissue[.] [The Commission quotes Dr. Silver's surgery notes at length.] It is clear from this description that *in addition to the degenerative changes to plaintiff's ligamentous flavum, the second surgery involved the removal of scar tissue from the first surgery.*

(Emphasis added). We note this finding is largely comprised of recitations of Dr. Silver's testimony and written surgery notes, which in themselves do not constitute findings of fact. *See, e.g., Bailey v. Sears Roebuck & Co.,* 131 N.C. App. 649, 653, 508 S.E.2d 831, 835 (1998) (noting that recitations of testimony do not constitute findings of fact and "reluctantly" accepting the Commission's recitations as findings of fact). Our Court has stated that "it is the Commission's duty to find the ultimate determinative facts, not to merely recite evidentiary facts and the opinions of experts. This is especially important in light of the requirement that the Commission demonstrate its consideration of the relevant evidence." *Davis v. Weyerhaeuser Co.,* 132 N.C. App. 771, 776, 514 S.E.2d 91, 94 (1999). However, as the last sentence of finding fourteen reflects the Commission's consideration of the evidence recited, we find finding fourteen is adequate as a factual finding. Moreover, the evidence recited by the Commission is competent evidence of record to support the Commission's finding. Dr. Silver explained during his deposition that "the scarring and the fibrosis around the nerve[] obviously related to the surgery." The Commission's statement that the stenosis was "due to the prominence of the ligamentum flavum and the scar tissue" is supported by the report from plaintiff's 1 April 2002 myelogram, which notes that the myelogram revealed "moderate to severe spinal canal stenosis . . . secondary to prominence of the ligamentum flavum and the scar tissue." The Commission's statement that plaintiff's surgery

involved the removal of scar tissue is supported by Dr. Silver's operative notes in which he recorded that he "dissected" scar tissue from plaintiff's bone and nerve root.

**[3]** Defendants next assign error to finding number fifteen:

> 15. As has already been found as fact above, plaintiff's first surgery would have made him more prone to develop degenerative changes, specifically ligamentous changes. The ligamentum flavum Dr. Silvers removed is a primary spinal ligament, and was identified, along with the scarring, as a primary cause of the stenosis seen on the April 1, 2002, MRI.

The first sentence of finding fifteen refers to finding number thirteen, in which the Commission recited a portion of Dr. Silver's testimony, and found that testimony as fact:

> 13. . . . The other thing [spinal surgery] does is, by taking down part of the joint and by disrupting ligaments, there is also more of a propensity to develop degenerative changes at that level over time[.]

Defendants do not assign error to finding number thirteen, which is therefore presumed to be supported by competent evidence and is binding on appeal. *See Anderson Chevrolet/Olds v. Higgins*, 57 N.C. App. 650, 653, 292 S.E.2d 159, 161 (1982). In finding thirteen, the Commission found as fact that someone who has undergone back surgery is more prone to develop degenerative disease. In finding fifteen, the Commission restated Dr. Silver's generalized statement, but made it specific to plaintiff. Our Court tends to distinguish between general and specific statements relating to causation and propensity. *See Lewis v. N.C. Dep't of Corr.*, 167 N.C. App. 560, 564-66, 606 S.E.2d 199, 202-03 (2004) (finding competent evidence that a claimant's work-related injury exacerbated his pre-existing condition where testifying physicians made general statements that stress could exacerbate diabetes and specific statements that the plaintiff's posttraumatic stress disorder exacerbated his diabetes); *Bondurant v. Estes Express Lines, Inc.*, 167 N.C. App. 259, 262, 606 S.E.2d 345, 347 (2004) (noting that testifying physicians spoke in terms "both generally and in [the] plaintiff's case"). In the present case, while there is competent evidence of record to support the general statement of propensity in finding thirteen, there is no evidence in the record to support the Commission's more specific finding as to plaintiff's propensity to develop degenerative changes.

**[4]** We next address the second sentence of finding number fifteen, that the ligamentum flavum Dr. Silvers removed in the second surgery "was identified, along with the scarring, as a primary cause of the stenosis seen on plaintiff's 1 April 2002 MRI." We note that the imaging performed on 1 April 2002 was a myelogram and CAT scan, and not an MRI. As noted above, according to a report dated 1 April 2002, the myelogram and CAT scan showed "moderate to severe spinal canal stenosis . . . secondary to prominence of the ligamentum flavum and the scar tissue." This evidence supports the Commission's finding that the ligamentum flavum and scarring caused the narrowing of plaintiff's spinal canal.

**[5]** From its findings, the Commission concluded as a matter of law, and defendants contest:

> 3. As a consequence of his [May 2001] back injury, plaintiff required medical treatment, including the surgery performed by Dr. Silver on September 7, 2001, *and the second surgery, performed on April 22, 2002.* Defendants are responsible for payment of all such reasonably necessary medical treatment incurred by plaintiff for the lower back injury, including said surgeries, and follow-up to those surgeries[.]

(Emphasis added). Defendants contest this conclusion to the extent the Commission determined plaintiff's second surgery was a consequence of his May 2001 back injury and determined defendants were responsible for payments related to the second surgery. Defendants argue this conclusion is unsupported by the Commission's viable findings of fact and is erroneous as a matter of law. We disagree.

The Commission's viable findings on this issue establish: (1) as a result of his compensable injury, plaintiff underwent back surgery in September 2001; (2) plaintiff underwent a second back surgery in April 2002 to correct compression of nerves caused by the narrowing of the spinal canal; and (3) the narrowing of plaintiff's spinal canal was caused by thickened ligamentum flavum and by scar tissue from the first surgery. From these findings, the Commission concluded that plaintiff's second surgery was a consequence of his compensable May 2001 injury. We hold that these findings support the Commission's conclusion.

Defendants argue that Dr. Silver gave conflicting testimony on whether plaintiff's degenerative changes were due to the first surgery, or whether the degenerative changes were merely a consequence of

plaintiff's age. However, given the viable factual finding that plaintiff's stenosis was caused in part by scar tissue from his first surgery, we need not address Dr. Silver's testimony regarding plaintiff's degenerative changes. Plaintiff has shown that scar tissue from his first surgery, which is an undisputed consequence of his compensable injury, was a causal factor in the stenosis that led to plaintiff's second surgery. Accordingly, plaintiff's second surgery is also compensable.

### III. Plaintiff's ongoing disability

[6] On the issue of plaintiff's ongoing disability, defendants assign error to the following findings of fact:

> 4. . . . Although [plaintiff] had been released to work [on 31 October 2001], plaintiff had not been released from medical care and continued to suffer pain.
>
> . . .
>
> 18. Once plaintiff reestablished his disability when Dr. Silver took him back out of work in December 2001, the burden was again shifted back to defendants. Moreover, plaintiff's entirely credible testimony regarding his condition, history of continuing medical treatment, and qualification for Social Security Disability go far beyond mere presumptions in proving the ongoing nature of his disability and its direct link to his compensable specific traumatic incident.

Finding number four is supported by competent evidence of record. First, Dr. Silver noted on plaintiff's medical chart on 29 October 2001 that he would "see [plaintiff] back in 6 weeks. . . . For now, he is released back to work and will call me if he has any problems." Further, Dr. Silver testified in his deposition that plaintiff called Dr. Silver's office on 7 November 2001 complaining of pain. Plaintiff testified that he suffered back pain from 31 October to 27 December 2001. This assignment of error is overruled.

[7] Finding eighteen contains statements of fact and law. The second sentence of finding eighteen states in part that the Commission found plaintiff's testimony to be credible. It is well settled that the Commission is the sole judge of the credibility of evidence, and so we uphold that part of the finding. See Deese, 352 N.C. at 116, 530 S.E.2d at 553. The remainder of the finding pertains to the legal question of plaintiff's burden in proving ongoing disability. We will address that issue of law below.

[8] The Commission made the following conclusions of law, which defendants contest:

> 4. As a consequence of his [May 2001] back injury, plaintiff was unable to earn wages in any employment and was temporarily totally disabled from . . . December 27, 2001, and continuing. . . . Defendants are responsible for payment to plaintiff of wage loss compensation at the rate of $283.09 per week during this period. N.C. Gen. Stat. § 97-29.
>
> . . .
>
> 8. With regard to plaintiff's continuing inability to earn wages, the Court of Appeals affirmed a series of earlier holdings which have held that "medical evidence that a plaintiff suffers from genuine pain as a result of a physical injury, combined with the plaintiff's own credible testimony that his pain is so severe that he is unable to work, may be sufficient to support a conclusion of total disability." *Knight v. Wal-Mart*, 149 N.C. App. 1, 7-8, 562 S.E.2d 434, 439[-]40 (2002). . . . The *Knight* court also held that the concept of maximum medical improvement (MMI) is not relevant to the determination of entitlement to the continuation of temporary total disability (or TTD) benefits. *Knight* at 10, 441.

Defendants argue the Commission's conclusion that plaintiff was disabled from 27 December 2001 is unsupported by the Commission's viable findings of fact and is erroneous as a matter of law. We disagree.

The burden of proving disability under N.C. Gen. Stat. § 97-2(9) for the period subsequent to 27 December 2001 is on plaintiff. *See Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Under *Russell*, a plaintiff may meet this burden of proof by presenting medical evidence that, as a consequence of the work-related injury, the plaintiff is unable to work in any employment. *Id.* at 765, 425 S.E.2d at 457. As the Commission notes in conclusion eight, our Court has held that "medical evidence that a plaintiff suffers from genuine pain as a result of a physical injury, combined with the plaintiff's own credible testimony that his pain is so severe that he is unable to work, may be sufficient to support a conclusion of total disability by the Commission." *Knight v. Wal-Mart Stores, Inc.*, 149 N.C. App. 1, 8, 562 S.E.2d 434, 440 (2002), *aff'd*, 357 N.C. 44, 577 S.E.2d 620 (2003). Here, in finding six, the Commission found as fact that Dr. Silver wrote plaintiff out of work from 27 December 2001

through 1 February 2002, and that plaintiff was in increased pain from his fall on the ice. Dr. Silver testified that plaintiff's symptoms following his fall, which we have ruled does not bar continuing compensation, were "related to the fall" and that a person who has undergone spinal surgery is more likely to suffer "worse symptoms" from an injury to the back. Dr. Silver also testified that plaintiff's activity was "limited by pain." Plaintiff testified at length about the effect his pain had on his ability to work, as well as his qualification for Social Security disability compensation. The Commission found plaintiff's testimony to be credible and sufficient to prove the ongoing nature of his disability. We agree that this evidence satisfies plaintiff's burden under *Russell and Knight*. Accordingly, we uphold the Commission's conclusion that plaintiff suffered an ongoing disability after 27 December 2001.

Affirmed.

Judge HUNTER concurs.

Judge STEPHENS dissents with a separate opinion.

STEPHENS, Judge, dissenting.

"[The] rule of causal relation is the very sheet anchor of the [Workers'] Compensation Act. It has kept the Act within the limits of its intended scope,—that of providing compensation benefits for industrial injuries, rather than branching out into the field of general health insurance benefits." *Duncan v. City of Charlotte*, 234 N.C. 86, 91, 66 S.E.2d 22, 25 (1951) (citations omitted). Because I do not believe that the medical evidence in this case is sufficient to support the existence of a causal relationship between Plaintiff's compensable back injury of 26 May 2001 and the second surgical procedure performed on his back on 22 April 2002, I respectfully dissent from the majority opinion.

It is undisputed that, sometime around the end of November 2001, Plaintiff slipped on a ramp at his house and fell, landing on his "tailbone or . . . butt." It is further undisputed that approximately a month earlier, Plaintiff had returned to full-time, full-duty work for his employer in a job that required him to repair gaming machines weighing several hundred pounds. Dr. Silver's uncontradicted testimony establishes that, according to Plaintiff, he had been doing "very well" at the time he was released to go back to work, but after

the fall, he "began to have problems with significant pain in his back and pain down both legs." When. conservative treatment failed to relieve Plaintiff's symptoms, Dr. Silver performed a second surgery. The majority agree with the Commission that Plaintiff's slip and fall aggravated his earlier compensable injury, and thus, the second surgery is compensable under the causation theories applied in *Horne v. Universal Leaf Tobacco Processors*, 119 N.C. App. 682, 459 S.E.2d 797, *disc. review denied*, 342 N.C. 192, 463 S.E.2d 237 (1995). I disagree.

This Court's decision in *Horne* reveals that, following a compensable on-the-job injury, Mr. Horne underwent two surgical procedures on his back. While he was still out of work and recovering from the second surgery, he was involved in an automobile accident. Mr. Horne's treating neurosurgeon, Dr. Tomaszek, recommended a fusion to treat Mr. Horne's worsened condition. Owing to the occurrence of the automobile accident, Mr. Horne's employer denied that the need for the third surgery was causally related to the on-the-job injury. In reversing the Commission's denial of benefits, this Court noted the *uncontradicted* testimony of Dr. Tomaszek that (1) the recurrent disk rupture shown on the MRI obtained after the automobile accident was actually present before that accident at the same lumbar level as Mr. Horne's compensable first surgery, (2) Mr. Horne was complaining of "moderately severe" back and leg pain before the automobile accident and was not "comfortable" with his surgical results, (3) the automobile accident worsened the abnormal disk, and (4) the "pathology" leading Dr. Tomaszek to recommend a fusion after the automobile accident "all stems back to the work-related accident." *Horne*, 119 N.C. App. at 686-87, 459 S.E.2d at 800. On this uncontradicted evidence, this Court concluded that the automobile accident aggravated Mr. Horne's prior compensable injury, and thus, the consequences of that aggravation were also compensable. It is incomprehensible that a different result could have been reached.

Similarly, in *Roper v. J.P. Stevens & Co.*, 65 N.C. App. 69, 73, 308 S.E.2d 485, 488 (1983), *disc. review denied*, 310 N.C. 309, 312 S.E.2d 652 (1984), this Court determined that plaintiff was entitled to compensation for complications of phlebitis, arthritis, and severe body pain following a compensable on-the-job leg injury because it was "not disputed" that such complications "were the result of plaintiff's compensable injury." *Accord, Heatherly v. Montgomery Components, Inc.*, 71 N.C. App. 377, 382, 323 S.E.2d 29, 31 (1984) (plaintiff's second injury was a "refracture" of his first compensable frac-

ture), *disc. review denied*, 313 N.C. 329, 327 S.E.2d 890 (1985); *Mayo v. City of Washington*, 51 N.C. App. 402, 407, 276 S.E.2d 747, 750 (1981) (subsequent incidents "reinjured" plaintiff's original knee injury).

No such evidence can be found in this case. On the contrary, the uncontradicted testimony of Plaintiff's treating neurosurgeon, Dr. Silver, establishes the following: (1) Plaintiff sustained a ruptured disc at the lowest level of his lumbar spine as a result of his on-the-job injury, for which Dr. Silver performed a microdiscectomy on the left to remove the disc fragment that was compressing the nerve; (2) Plaintiff did "very well" after that surgery and was able to return full time to physically demanding work; (3) the left leg pain for which Dr. Silver prescribed a steroid medication for Plaintiff over the phone within a week of his return to work was not "an uncommon thing[;]" (4) Dr. Silver next saw Plaintiff almost two months later after Plaintiff fell at home, and Plaintiff told Dr. Silver that since that fall, "he had problems with pain in his back and pain now actually down both legs[,]" whereas the pain from his work injury had been limited to his left leg; (5) the symptoms which Plaintiff experienced after the fall on the ramp were "related to the fall[;]" (6) the degenerative changes seen on the imaging studies performed after the fall were "related to a normal aging process[;]" and (7) the surgery performed by Dr. Silver after the fall was a *bilateral* hemilaminectomy and facetectomy to remove a portion of the lamina of the bone (the vertebrae) on each side and to remove thickened ligaments to decompress the nerves and "give [them] more room[,]" because Plaintiff's spinal canal had become narrowed "due to degenerative change, including thickening of the joints themselves and thickening of the ligaments of the joints." Moreover, when Dr. Silver was directly asked whether "this thickening" that he removed to decompress the nerves in Plaintiff's spinal canal was "due to postsurgical changes from the first surgery[,]" he unequivocally responded, "No. . . . . *This was due to degenerative change at that same level* [as the first surgery], *not actually scar tissue but rather degenerative changes there.*" (Emphasis added). This testimony is undisputed.

Dr. Silver was not asked whether the slip and fall aggravated Plaintiff's earlier work injury. Indeed, the only question he was asked about the potential relationship between the condition for which he performed the second surgery and the preexisting condition of Plaintiff's back from the work injury was whether the thickening of the joints and ligaments that he removed during that surgery was

"due to postsurgical changes from the first surgery[] [or] [w]as this scar tissue[?]" As noted above, his uncontradicted answer was unequivocally in the negative, and his explanation establishes that he operated on Plaintiff's back a second time because of degenerative changes which Plaintiff failed to prove were related in any way to the work injury. In fact, answering questions about his second surgery, Plaintiff testified, "[Dr. Silver] said that I had arthritis . . . around my sciatic nerve that was causing the pain down my leg. . . . He said he removed the arthritis around the sciatic nerve."

Thus, unlike the uncontradicted evidence which overwhelmingly established that a subsequent accident had aggravated the preexisting compensable condition of Mr. Horne's back, which supported this Court's holding that "the subsequent aggravation of [the primary compensable] injury is a natural consequence that flows from the primary injury[,]" *Horne*, 119 N.C. App. at 685, 459 S.E.2d at 799 (citation omitted), the evidence in this case fails to establish that Plaintiff's fall aggravated his primary compensable injury. There is thus no basis for the Commission's conclusion, under *Horne*, that Plaintiff's "pain and medical consequences [after the fall] were a natural progression of the earlier injury." Furthermore, because there is no evidence that the subsequent fall aggravated Plaintiff's earlier injury, it is not necessary to reach the issue of whether Plaintiff's fall was a result of his own intentional conduct. In any event, as the majority notes, the Commission's determination that Plaintiff's slip and fall was not "of his own volition[]" was not a contested issue in the case. It is simply an irrelevant issue unless aggravation is first proved.

I agree with the majority's conclusion that the Commission's finding of propensity (*i.e.*, that Plaintiff's first surgery made him more prone to develop degenerative changes) is unsupported by the evidence. I disagree, however, with the majority's approval of the Commission's selection of information from the medical records to provide support for its conclusion that a causal relationship exists between Plaintiff's compensable work injury and second surgery, that is, that because Dr. Silver's operative report indicates that he also removed scar tissue when he removed the thickened joints and ligaments, the second surgery was necessitated by the original compensable injury. I disagree because, as has already been discussed, Dr. Silver unequivocally testified that he performed the second surgery to relieve narrowing of the spinal canal, and that the narrowing was caused by degenerative changes, specifically thickening of the joints and ligaments, not by "postsurgical changes[,]" and not by scar

tissue. This testimony was elicited by Plaintiff. Given Dr. Silver's unambiguous explanation about the reason that he performed the second surgery, it appears that the removal of scar tissue under these circumstances was merely incidental.

Allowing the Commission to ignore the expert's uncontradicted and unequivocal testimony, and to instead substitute its interpretation of the medical records to arrive at a different opinion than the expert has expressed, goes far beyond viewing the evidence in the light most favorable to the employee. Moreover, in my opinion, acquiescing in the Commission's actions here contravenes the directives of our Supreme Court which has repeated time and again that in cases involving complicated medical questions, "only an expert can give competent opinion evidence as to the cause of the injury." *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980) (*citing Gillikin v. Burbage*, 263 N.C. 317, 139 S.E.2d 753 (1965)). Significantly, the *Click* Court recognized and relied upon "the continuing medical difficulty in determining the etiology of intervertebral diseases and injuries[]" in holding that "[r]eliance on Commission expertise is not justified where the subject matter involves a complicated medical question." *Id.* at 168, 265 S.E.2d at 391 (citation omitted). Instead,

[i]n the absence of guidance by expert opinion as to whether the accident could or might have resulted in his injury, the Commission could only speculate on the probable cause of his condition. Medical testimony was therefore needed to provide a proper foundation for the Commission's finding on the question of the injury's origin.

*Id.* at 169, 265 S.E.2d at 392.

The question is no less complicated because it concerns the aggravation of a preexisting condition rather than the direct cause of an injury. In fact, the medical causation issues are probably more complex in cases such as this one, involving the existence of a causal link between a traumatic injury and conditions that occur unrelated to trauma, complicated further by the impact of significant recovery from the original traumatic injury before the occurrence of another injurious incident. I am of the opinion that, as in *Click*, medical testimony was necessary in this case to establish whether Plaintiff's subsequent fall aggravated his original work-related injury. For the reasons stated, I am of the opinion that the evidence fails to estab-

lish the requisite causal connection to make Plaintiff's subsequent surgery compensable. I thus vote to reverse the decision of the Commission.